# Mobile & Girard Railroad Company *v.* Copeland.

*Action against Common Carrier for Loss of Goods.*

. 1.　*Common carrier; liability for loss of goods beyond his route.*—As to the lia- bility of a common carrier who receives goods consigned to a point beyond the terminus of his own line or route, and does not by express agreement limit his liability to losses or injuries over his own line, there is a conflict of judi- cial decisions; but this court adopts the rule laid down in the leading English case, *Muschamp v. L. & P. Railway Co.* (8 Mees. & W. 421), and holds the car- rier liable for the non-delivery of the goods at the designated place.

APPEAL from the Circuit Court of Pike.

Tried before the Hon. H. D. CLAYTON.

This action was brought by John T. Copeland against the appellant, as a common carrier, to recover $1200 "as dam- ages for the failure to deliver certain goods, to-wit, one bale of bedding, received by the said railroad company as a com- mon carrier, at Troy, Alabama, on the 20th November, 1877, to be delivered to the plaintiff at Texarkana, Texas, for a reward; which said railroad company failed to do." The only plea was the general issue, and the cause was tried on issue joined on that plea. On the trial, as appears from the bill of exceptions, the plaintiff offered in evidence the re- ceipt, or bill of lading for the goods, given to him by the agent of the railroad company, at Troy, in said county of Pike; which receipt only stated that the goods were received from the plaintiff, at Troy, on the 20th November, 1877, for shipment to Texarkana, Texas, and contained no conditions or stipulations whatever. "The plaintiff further proved, that the bale of bedding mentioned in said receipt, as weighing 340 pounds, was his property, and was worth $1,170; that, being about to emigrate to Texas, he went to Troy with his family, for the purpose of setting out on his journey over the Mobile and Girard railroad; that he had. among other things, said bale of bedding, which he asked might accom- pany him as baggage usually allowed to passengers, and of- fered to pay for it; that the agent refused, and said it must

go as freight, and that he could pay for it at Texarkana, and that it would reach there in three days or a week after plaintiff's arrival; that the agent then executed the receipt, and he (plaintiff) accepted it. It was further proved, that the said bale of bedding has been demanded, at the proper place, in Texarkana, Texas; that the plaintiff has failed to procure, and the defendant has failed to deliver it. The defendants proved, that they carried the said bale of bedding to Union Springs, Alabama, and there delivered it to the Montgomery and Eufaula Railroad Company, a separate and distinct railroad, in the direct and proper line of transportation, over which defendants have no control, and between which and defendants there is no understanding or agreement, as to the transportation of freight, except that usual and generally existing between connecting railroads and other kinds of common carriers. The bale of bedding was lost, some where on the route, after it was delivered to the said Montgomery and Eufaula Railroad Company." This being all the evidence in the case, material to the points here presented for revision, the court charged the jury, on the request in writing of the plaintiff, "if they believed the evidence, they must find for the plaintiff;" and this charge, to which the defendant excepted, is now assigned as error.

NORMAN & WILSON, for appellant.—In England, the rule is settled, that the receipt of goods by a common carrier, consigned to a point beyond the terminus of his own route, creates a *prima facie* contract on his part to deliver them safely at their destination, or to respond in damages; and this doctrine has been held by some of the American courts. But the prevailing rule in the United States holds the carrier only bound, in the absence of a special contract extending his liability, to deliver the goods in good condition, at the end of his route, to the succeeding carrier on the route of their destination. And this rule is based on sound principles; for the carrier is bound by his official duty to receive goods tendered to him for transportation, and to carry them to the end of his route, but no further; and when any one attempts to hold him liable for a loss or injury beyond and outside of his official duty, the liability can only arise from a special contract. The official duty and liability are created and imposed by law; and additional stipulations, limiting or extending that liability, can only arise from special contract.—*Rawson v. Holland*, 59 N. Y. 611; *Reed v. United States Express Co.*, 48 N. Y. 462; *Skinner v. Hall*, 60 Maine, 477; *Perkins v. Portland, S. & P. Railroad Co.*, 47 Maine, 573; *Railroad Co. v. Manufacturing Co.*, 16 Wallace,

318; *Gray v. Jackson*, 51 N. H. 9; *Burroughs v. Norwich Railroad Co.*, 100 Mass. 26; *Baltimore Railroad Co. v. Schumacher*, 29 Md. 168; *McMillan v. Mich. So. Railroad Co.*, 16 Mich. 79; *Amer. Express Co. v. Second National Bank*, 69 Penn. St. 394; *Hood v. N. Y. & N. H. Railroad Co.*, 22 Conn. 1; *Converse v. Norwich & N. Y. Trans. Co.*, 33 Conn. 177; *Lawrence v. Winona Railroad Co.*, 15 Minn. 390; *Mullasky v. Phil. Railroad Co.*, 3 Phil. (Penn.) 114; *M. & W. P. Railroad Co. v. Moore*, 51 Ala. 576; *So. Express Co. v. Hess*, 53 Ala. 19; *Ellsworth v. Tartt*, 26 Ala. 733; Redfield on Carriers, ch. 14.

W. D. Wood, *contra*.—A railroad company, as a common carrier, receiving goods for shipment to a point beyond the terminus of its own route, is liable to the owner for a loss or injury occurring beyond its line, in the absence of an express contract to the contrary. This is the settled law of England, since the decision of the leading case of *Muschamp v. Lancaster & Preston Railway*, 8 Mees. & W. 421. It is founded on the same principles of public policy which regulate and determine all the duties and liabilities of common carriers, and it has been adopted by many of the courts in the several States of the Union.— *Weed v. S. & S. Railway*, 19 Wendell, 524; *F. & M. Bank v. Ch. Transportation Co.*, 23 Vermont, 186; *McCluer v. M. & L. Railroad*, 13 Gray, 124; *Rogers v. R. & B. Railroad*, 27 Vermont, 110; *Wilcox v. Parmelee*, 3 Sandf. 610; *Nashua Lock Co. v. W. & N. Railroad*, 48 N. H. 339; *Gray v. Jackson*, 51 N. H. 9; *Foy v. T. & B. Railroad*, 24 Barbour, 382; *Schroeder v. Hudson River Railroad*, 5 Duer, 55; *Kyle v. Laurens Railroad*, 10 Rich. (S. C.) Law, 282; *Central Railroad v. Copeland*, 24 Illinois, 332; *Central Railroad v. McComas*, 33 Illinois, 185; *Angle v. M. & M. Railroad*, 9 Iowa, 487; *St. John v. Van Santvoord*, 25 Wend. 660. Some of the American cases hold the carrier liable for a loss occurring beyond his line, if he charged and collected freight for the whole route.—19 Wendell, 534; 3 Sandf. 610; 17 N. Y. 315; 24 N. Y. 269; 18 Penn. 224; 21 Wisc. 582; 31 Cal. 52; 4 Sneed, 203. Whether the freight charges are paid at one end of the line or the other, can make no difference in the principle, especially where, as in this case, there was an offer to pay to the receiving company.

BRICKELL, C. J.—The liability of a common carrier, receiving goods for transportation, directed to a place beyond the terminus of his own line or route, who does not by express agreement limit his duty and responsibility for the non-delivery of the goods at the point of destination, is for the first time presented for the consideration and decision of

.this court. The importance of the question is manifest, and it is to be regretted that it is embarrassed by an irreconcila- ble conflict of authority in this country. In *Ellsworth v. Tartt*, 26 Ala. 733, as in *M. & W. R. R. Co. v. Moore*, 51 Ala. 394, the question was as to the liability of an intermediate car- rier, for a loss or injury *not occurring on his own route;* and it was held, that, in the absence of a special contract, or of some special relation between carriers having control of different parts of a line or route of transportation, each car- rier is liable only for a loss or injury on his own route or line. We have no inclination to depart from these decisions, applied to the particular facts of the cases; but it is obvious they do not meet the question now presented.

The leading case in England, upon this question—that of *Muschamp v. L. & P. Railway Co.*, 8 Mees. & Welsby, 421 (which has been approved and followed, in numerous subse- quent cases), settled the rule, that where a carrier receives goods, directed to a place beyond the terminus of his own route, without limiting his liability by express agreement, by the acceptance of the goods he assumes the duty, and incurs the obligation, to deliver them safely at the point of destina- tion. A number of the American courts have adopted and followed this rule, and a number have rejected and disap- proved it, as unjust to the carrier, and unnecessary upon any considerations of public policy. The authorities are collected in the recent work, Hutchinson on Carriers, §§ 148–9, and notes. To review them is not possible, without extend- ing this opinion to an unusual length; and we shall simply . express briefly the reasons which induce us to adhere to the rule laid down in *Muschamp's case.*

It must be regarded as settled, that a carrier, though a corporation, chartered by the laws of a particular State, having a known and defined line of transportation, may con- tract for the safe carriage and delivery of goods to a point beyond the terminus of his line, within or without the State; and if such a contract is made, all connecting lines stand in the relation of his agents, for whose defaults he is responsi- ble to the owner of the goods.—Hutchinson on Carriers, § 145. When goods are consigned to a place on his own line of transportation, the known and established duty of a car- rier is to deliver them at that place, and to the person who has the right to receive them. A mistake, however innocent, in making delivery, either to the proper person, or at the proper place, involves him in liability. When he accepts goods, directed to a place beyond the line of his route, not limiting his liability, what difference is there in the measure of his duty and liability? To assume that he is a carrier

only to the terminus of his own route, and from thence a forwarder, is, as was said by Lord ABINGER, in *Muschamp's case*, to assume that the shipper and carrier enter into "a very elaborate kind of contract; it is, in substance, giving to the carriers a general power along the whole line of route, to make, at their pleasure, fresh contracts, which shall be binding upon the principal who employed them." Unless the shipper in person attends the goods, and enters into these new contracts, they are practically unilateral; and it is difficult to believe that any shipper ever intends assenting to a contract with the receiving carrier which involves such consequences. When, without a special contract, he intrusts his property to the receiving carrier, he understands that the duty and obligation of the carrier is to deliver safely at the point of destination. If that be beyond the line of the receiving carrier, he understands that the receiver must have some connection with other carriers, by whose agency the delivery is to be made. With these he has no connection or communication, nor can it be intended that he should have. When there is a failure to deliver, to compel the owner to pass the carrier with whom he contracted, to whom he made delivery, because it may be that there was no default on his part, and search through the entire line of transportation, until he finds the delinquent, seems to us inconsistent with the principles which underlie the whole doctrine upon which are founded the duty and liability of common carriers. As in this case, the line of the receiving carrier may cover but an insignificant part of the entire line of transportation, and before the point of destination is reached, numerous carriers must intervene; to compel the owner to pass the carrier with whom he first dealt, because he was guilty of no delinquency, and travel over the whole line until he finds who of the connecting carriers was in default, is to condemn him to almost certain loss. The true doctrine, that which is most consistent with all the principles which govern the liability and duty of carriers, and which seems to us required by the same necessity and public policy upon which these principles are founded, is, that a common carrier who receives goods destined for a place beyond his own line of transportation, not expressly otherwise limiting his duty and liability, must be regarded as contracting for a delivery at the point of destination. It can not be said this rule is more unjust to the carrier, than that which holds him liable as an *insurer*, for loss or injury not occurring by the act of God, or of the public enemy. Nor is it more unjust than the rule which compels him to receive all goods within the scope of his business, which are offered to him for transportation on his

'own line. The injustice seems to us to be visited upon the public, who are compelled to employ carriers, if the opposite rule is adopted.

Let the judgment of the Circuit Court be affirmed.