# South & North Alabama Railroad Company *v.* Wood.

*Action against Railroad Company for Failure to Deliver Freight.*

1. *Charges to jury; how given and how construed.*—Charges to jury should be given in reference to the tendencies of the testimony, and should be construed in the light thereof.

2. *Liability of railroad company for loss of freight shipped to a "flag station;" burden of proof.*—Where, in an action against a railroad company, as a common carrier, to recover damages for the failure to deliver a quantity of corn received by it for transportation to a designated point on the road, at which there was neither depot nor agent, it was shown that the corn was received by the company and transported in good condition to the place of destination, and the car in which it was shipped, was placed on a side-track for the consignee, where it remained for several days, with no one in charge of, or protecting it, and that when the corn was taken from the car and measured, there was a deficiency in quantity,—*held*, that the burden of proof was on the plaintiff to show that the loss occurred between the time when the corn was received by the company, and the time when the car containing it was left on the side-track, that being, under the facts of this case, a delivery, and not on the defendant to show that the loss occurred after the car was placed on the side-track.

APPEAL from Blount Circuit Court.

Tried before Hon. LeRoy F. Box.

This case was before this court at a former term, and is reported.—*South & North Ala. Railroad Co. v. Wood*, 66 Ala. 167. It was an action brought by the appellee against the appellant, a railroad corporation, to recover damages for the failure to deliver seventy-five bushels of corn in the shuck, alleged to have been delivered to it for transportation. The defendant pleaded the general issue, "in short by consent, with leave to give in evidence any special matter which might be good, if properly and well pleaded;" and the cause was tried on issue joined thereon, the trial resulting in a verdict and judgment for the appellee. The facts sufficiently appear in the opinion.

THOS. G. JONES and RICE & WILEY, for appellant, cited Hutchinson on Carriers, § 760; 2 Greenl. on Ev. § 213.

[South & North Ala. R. R. Co. v. Wood.]

HAMILL & DICKINSON, *contra*, cited the former decision in this case, and Angell on Carriers, § 129.

STONE, J.—In the general charge given to the jury in the present case, they were informed that the liability of the railroad terminated when the car, containing the corn, was delivered at the point of destination. The testimony shows that the agreed place of delivery was Smith's mills, a private siding, and not a station on the road. No one was there, or expected to be there, to receive the corn. The testimony tends to show that the car, containing the corn, stood on the siding at Smith's mill as much as seven or eight days, where no one was in charge of it, or protecting it. The testimony tends to show, also, and the jury so found, that when the corn was received by the railroad company, there were three hundred bushels, and that when it came to be measured out there were only two hundred and twenty-four 50–100 bushels. With the finding of the jury, or whether the evidence justified it, we have nothing to do. There are rules for ascertaining how many bushels of corn, in the condition this was in, a car of the given dimensions would hold, and, of course, for ascertaining how much would half fill it, or fill it two-thirds full. But, as we have said, we have nothing to do with these questions. The jury found there was a loss, and we can only inquire whether the law for their government was correctly given in charge to them. The court, among other things, charged the jury, that "in the case of goods delivered to common carriers, for carriage, when there is a loss or damage of the goods, the burden of proof is always on the carrier, to show that his liability terminated before the loss or damage in question occurred." Bearing in mind that the liability of the railroad, as a carrier, terminated when the car was left at Smith's mill, the effect of this charge was to tell the jury, as an independent proposition, that the burden was on the railroad, to prove that the quantity of corn was in the car when it was left on the side-track; and this, without any predicate of proof, or fact, that the quantity in the car was then deficient; in other words, that if the proof showed there were three hundred bushels when the railroad received the corn, then the liability of the railroad was fixed, unless it, the railroad, proved it delivered three hundred bushels. Thus construed, the only fact necessary to be proved by the plaintiff, according to the charge, was, that the railroad received the corn. The burden would then shift, and the railroad would be required to prove, either that the corn was not lost or abstracted while in its possession, or that it was lost after the car left its possession by being placed on the side-track.

In ordinary cases, freight received by a railroad, for trans-

portation, is to be delivered at one of its stations. The road having an agent at such station, who receives the freight from the train, and delivers it to the consignee, there will, ordinarily, be little or no contest over the matter of delivery. There being, in such case, no intermediary agency, the question of delivery *vel non* is one of simple, naked fact, and susceptible of easy proof. Hence, few controversies are likely to arise on that question. But when, as in this case, there is an intervening period between the time when the railroad rightfully parts with the possession, and the consignee takes actual control—a time when no one exercises actual watch and ward over the freight—it is not unreasonable that disputes should arise, as to when the loss did actually occur. It becomes material to inquire, what proof it was necessary for the plaintiff to make, before the *onus* was shifted to the defendant. Speaking on this subject, Greenleaf, in his work on Evidence (vol. 2, § 213), says; "If the loss or non-delivery of the goods is alleged, the plaintiff must give some evidence in support of the allegation, notwithstanding its negative character." In Hutchinson's excellent treatise on Carriers (§ 764), the principle is thus expressed : " Although the claim of the plaintiff, in an action for the loss of the goods, may rest upon negligence, or nonfeasance, and not upon a positive misfeasance, and would, therefore, seem to require proof of a negative character, the burden of showing the loss is unquestionably upon him, and he must give some proof of the allegation of the loss, notwithstanding its negative character; and if it be out of his power to show positively the loss of the goods, he must at least show such circumstances as would create the inference against the defendant that they had been lost; as, for instance, that they had been bailed to the carrier a sufficient length of time to be transported to their destination, and had not been there received or delivered to the person entitled to them, to whom they were consigned." As thus stated, the law casts on the plaintiff the duty of proving non-delivery.— *Woodbury v. Frink,* 14 Ill. 279.

We think much light is shed on this question, by the rule which obtains where freight is received by one railroad company, to be transported over its road, and then delivered to another line running in continuation, and, possibly, to be delivered successively from road to road, until it reaches its destination. We do not gainsay the rule, that when the road receiving such freight stipulates for its delivery at the point of destination, although beyond the terminus of its road, then the owner or consignee can hold the first road responsible for the non-delivery at the point of destination, no matter on which intervening road the loss occurred.—*Mobile & Girard Rail-*

*road Company v. Copeland*, 63 Ala. 219. But when, by the terms of the contract, the receiving railroad stipulates to transport to its terminus, and there to deliver to another line running in continuation, and that to another, and so on, as the case may be, the rule is different. If there is a failure to deliver the goods at the point of destination, that, without more, casts the *onus* on neither railroad to account for the loss. To recover against the road receiving the freight with such conditions, the plaintiff must go further, and prove a failure of such receiving road to deliver to the next succeeding road; and if the suit be against either of the other railroads, the plaintiff must prove both a receipt of the freight, and a failure to deliver it, either to the next succeeding line, or at the point of destination, as the case may be. Less than this does not make a *prima facie* case against either railroad company.—Hutch. on Carriers, §§ 106, 108, 759. In *Midland Railway Co. v. Bromley*, 33 Eng. Law & Eq. 235, the suit was against the receiving railway company, whose duty, under the contract, was to deliver the portmanteau, the subject of the suit, to another connecting railway company, the latter company to deliver it at the point of destination. The portmanteau was lost, and did not reach the point of destination. The cause was heard in the court of Common Pleas, and the judges delivered their opinions *seriatim*. JERVIS, C. J., said: "If it [the portmanteau] was stolen, or lost, by the Midland Railway Company, then the defendant's contract was not performed; but, if it was stolen or lost by the Bristol and Exeter Railway Company, then it was performed. The evidence produced at the trial is consistent with each of these suppositions. It is as consistent with the evidence that the portmanteau was lost or stolen by the one company, as by the other; and therefore I think there was nothing to go to the jury." CRESWELL, J., said: "The plaintiff has not given any evidence of negligence on the part of defendant's servants." WILLIAMS, J., said: "It lay on the plaintiff to have given some proof of a non-delivery to the Bristol and Exeter Railway Company." The language of CROWDER, J., was: "The *onus* was on the plaintiff to show that there had not been a delivery of the portmanteau."—See, also, *Gilbart v. Dale*, 5 Adolph. & Ell. 543; *Griffiths v. Lee*, 1 Car. & P. 110; *Anchor Line v. Dater*, 68 Ill. 369; *Chic. & N. W. R. R. v. Northern Line Packet Co.* 70 Ill. 217.

In this very case, the court had charged the jury, "that the burden of proof was on the plaintiff, to show that he delivered the corn to the defendant, which he claims damages for in this suit, and that such corn was not delivered by defendant to the consignee, at the point of destination." This charge recognizes

the doctrine, that the *onus* is on the plaintiff to prove non-delivery to the consignee. Charges to the jury should be given in reference to the tendencies of the testimony, and should be construed in the light thereof. Thus construing the charge first above copied, we hold the Circuit Court erred in holding, by necessary implication, that the burden was on the defendant, to prove that the corn—the entire three hundred bushels received—were in the car when it was delivered by being left on the side-track at Smith's mill. As to this question, under the contract and facts shown in this case, it was the duty of the plaintiff, and the burden was his, to satisfy the jury, that the loss or abstraction had occurred while the car was in the control of the railroad employes; in other words, that the road had not delivered all the corn it received from the shipper. By delivery, we mean, placing the car containing the corn on the side-track agreed on.

It may be supposed the rule here declared operates very hardly on the consignee, because it requires him to make proof which is negative in its nature. The opposite rule would apparently operate with equal oppression on the railroad. These reflections may suggest the impolicy of making contracts which are so liable to lead to misunderstandings, and to litigation. They can not justify the overthrow or disregard of great legal principles, which are sanctioned and fortified by such distinguished names. The question of delivery *vel non*, or when the loss, if there was a loss, did occur, was and is one for the jury to determine. They must form their opinion and verdict from the facts and circumstances in evidence. In this, they but perform a service often cast upon them, of determining disputed controversies on testimony that is not, or may not be positive, or convincing beyond reasonable doubt. Satisfactory conviction is the measure of proof required in civil causes.

We are aware that, in the rulings above, acute criticism may discover a seeming discrepancy between our ruling when this case was formerly before us, and the present opinion. See opinion in this case on former appeal, 66 Ala. 167. The principle there stated is strictly applicable to a case where freight is delivered, but is found in a broken or damaged condition. In such case, the *onus* is evidently on the carrier to exculpate itself from all blame in the matter of the break or damage. But in this case the question rests on different principles. The question is the non-delivery of the corn,—not the condition in which it was delivered. On this question, as we have shown above, the *onus* is on the plaintiff primarily to make some proof of the non-delivery. This question, as we have shown, being a subordinate one, and of easy proof when the freight is deliv-

[Mobile Life Insurance Co. v. Randall.]

ered at a depot, becomes very material when the freight is de-
livered at a private siding, as in this case.

Reversed and remanded.