HILL *v.* St. Louis Southwestern Railroad Company,

Opinion delivered February 3, 1900.

Carrier—Shipment to Blind Station—Delivery.—Where a car load of grain was shipped to a side-track having no agent, under a bill of lading issued by a connecting carrier which stipulated that the switching of said car "at such side track shall be and constitute a complete delivery," the delivery was complete when the car was switched at the side-track, and the ultimate carrier is not liable for any damage or loss which occurred thereafter. (Page 460.)

Appeal from Ouachita Circuit Court.

CHARLES W. SMITH, Judge.

*Smead & Powell*, for appellants.

The initial carrier could not be forced to deliver the goods beyond its own line.    64 Ark. 115; 63 Ark. 326; 39 Ark. 148; *ib.* 529; 40 Ark. 375.    Hence the initial carrier's stipulation against liability beyond its own line is valid.    63 Ark. 330; 47 Ark. 103; 44 Ark. 209; 52 Ark. 30; 35 Ark. 402.    If appellee had been merely an agent of the initial carrier, the exemptions in the latter's contract might apply.    50 Ark. 397; 39 Ark. 148, 154; 18 Am. & Eng. R. Cas. 590.    But, as consideration to support any exemption from liability, the initial carrier would have had to do something for appellant which the law did not require of him.    57 Ark. 112, 127. The mere undertaking to convey to the end of its line and then deliver to the connecting carrier was not such consideration, and the appellee can claim no benefit from the stipulations of the initial contract.    49 N. Y. 495; 61 Pa. St. 86.    The mere receipt of freight directed to a point beyond the carrier's lines does not create a special contract to carry to destination.    54 N. Y. 502; 3 Fed. 768; 9 Mo. App. 166; 6 Am. & Eng. Enc. Law (2 Ed.), 635; 23 Conn. 457, S. C. 63 Am. Dec. 143; 33 Conn. 166; 36 Minn. 396; 51 Miss. 222, S. C. 24 Am. Rep. 626; 19 S. Car. 353; 76 Tex. 195; 15 S. W. 503; 31 Fed. 247; 87 Tex. 311.    The "traffic arrangement," for the division of freight collections, between appellee and the initial carrier does not make appellee a party to the contract, so as to be entitled to the exemptions of the initial carrier.    16 Am. & Eng. R. Cas. 194; 24 S. W. 362; 12 Mo. App. 479; 127 N. Y. 438; 81 Ga. 602.    Receipt of freight for the whole distance, under such an arrangement, did not make the initial carrier a common carrier beyond its own line.    113 Mass. 490. The bill of lading is the only evidence of the contract with the initial carrier, and it can not be altered or varied by parol.    65 Ark. 333.    The law *prima facie* fixes upon appellee the liability of a common carrier, and throws upon it the burden of showing any exceptions therefrom.    5 Am. & Eng. Enc. Law (2 Ed.), 359; 46 Ark. 244; Hutch. Carr. §§ 4, 344, 373.    The liability

of a railway company continues after goods have arrived at their destination, until the consignee has had a reasonable time, after notice, to remove them. 2 Redf. Rys. 81; Story, Bailm. § 543. Before appellants could be held bound by appellee's usages as to delivery at "prepay" stations, they must be shown to have had knowledge of them. 54 Mich. 609; 63 Me. 105; 18 Am. Rep. 200; 51 *id.* 489; 50 N. Y. 666; 34 N. Y. 425; 44 N. Y. 500; 50 Barb. 289; 99 Am. Dec. 749; 54 Ga. 554; 20 Ark. 251; 52 Mo. 434; 100 U. S. 686; 33 How. 420. If personal knowledge of appellants was not shown, it was necessary to show that the usage was so universal and notorious that all are presumed to know it. 15 Gray, 82; 23 Me. 90, S. C. 39 Am. Dec. 311; 25 Am. Dec. 363; 26 Mo. 386; 31 Eng. C. L. 342; 4 Metc. (Ky.) 121; 66 N. W. 598; Hutch. Carr. §§ 342, 345.

*Jno. T. Sifford* and *Sam. H. West,* for appellee.

The stipulation in the bill of lading inured to appellee. Hutch. Carr. §§ 271, 272; 39 Ark. 158. Since the bill of lading was not made out to shipper's order, appellee was justified in delivering the goods at Ogemaw. Appellant, being told that Ogemaw was a "prepay" station, is held to have agreed to the conditions of delivery existing there, and is bound thereby. 66 Ala. 167; Elliott, Railroads, §§ 1527, 1522; Porter, Bills of Lading, § 396; Ray's Neg. Imp. Duties, Freight Carr. § 137; p. 409; 46 Ark. 222; 13 Fed. 181.

BUNN, C. J. This is a suit by the appellants here against the defendant railway company, the appellee here, for the loss of a car load of grain alleged to have been worth $250. The case was tried on an agreed statement of facts and some additional testimony, and by the court sitting as a jury. The court found for defendant, and rendered judgment accordingly, to which plaintiffs excepted, and appealed to this court.

There is a variance between the declaration and the bill of lading upon which the grain was shipped, but the plaintiff contends that the bill of lading is effectual only as between the initial carrier, which issued it, and the shippers, and that the connecting carrier carried the car under shipper's order contract, or a

common law contract, without limitation of liability. This, in fact, is the sole matter in controversy. The bill of lading upon which this car was issued by the initial carrier, the M. K. & T. Ry. Co. at Temple, Texas, and shipped by it to Texarkana, and exhibited in evidence by the plaintiff, is a through bill of lading from Temple, Texas, to Ogemaw, Arkansas, the latter being a prepay or blind station on the connecting carrier's road; that is to say, a station having no freight agent and no depot building. The bill of lading shows that the freight was paid in advance to the agent of the M. K. & T. Ry. Co. at Temple, Texas, and that the consignment was not to shipper's order, but to D. W. Hill at Ogemaw, Arkansas. The bill of lading contains limitations upon the carrier's liability, among others, the following: "It is further stipulated and agreed that the freight destined to switches or side tracks having no agent is receipted for under this contract upon conditions that freight is prepaid as an accommodation to the consignee, who hereby agrees that either the unloading of said freight, or the switching of said car containing the same at such side track, shall be and constitute a complete delivery, and that the Missouri, Kansas & Texas Railway Company shall not be liable for any loss or damage whatsoever that may occur, from any cause thereafter." It is shown in evidence that at the time there was existing between the two carriers what is known as a freight traffic arrangement. It is also shown in evidence that when the car was delivered at Texarkana by the initial carrier to the defendant, the connecting carrier, the said bill of lading was not delivered to the latter, but, in lieu thereof, a way bill was furnished, which "showed the shipper, the consignee, the destination, the route, and the conditions, and also the freight, whether prepaid or not, and the nature of the consignment." Much other evidence showing the nature of the shipment, and the customs of the roads and shippers, and circulars in relation thereto, etc., was adduced. The following is the agreed statement of facts referred to:

"We agree that the following stipulations of facts may be taken on the trial of the above cause: On July 25, 1895, the M. K. & T. Ry. Co. received for shipment one car of corn and oats from Temple, Texas, to Ogemaw, Arkansas, (the same

as Wamego, Arkansas,) and on that day issued its bill of lading therefor to Hill & Webb, consigning said car to D. W. Hill, Ogemaw, Arkansas; that the defendant, as a connecting carrier, received said car at Texarkana, Arkansas, and issued no new bill of lading.

"The defendant took said car, and in due and proper time carried it to the station of Ogemaw, a saw mill station, unincorporated, and four miles from the incorporated town of Stephens, where a station house and agent were and are maintained; and left said car on a side track in front of the business office of the saw mill company doing business at said station, adjacent (to) and near the place where freight was usually put on and off the trains, in full and public view. The said station was a small place of about one hundred and fifty inhabitants. That said car remained a short time—about a day—when J. E. Potts, the proprietor of the said saw mill, doing business at said place, without permission or authority from the defendant or plaintiffs, broke open said car, which was sealed and locked, took, unloaded, and carried away said corn and oats, and has not paid the defendant or the plaintiffs therefor, and that defendant has not paid plaintiffs therefor."

It was further shown in evidence that the car load of corn and oats was really intended for the Ogemaw Lumber Company, at Ogemaw, of which one J. E. Potts, referred to in the agreed statement of facts, was controller and manager; and that a draft on it, with said bill of lading attached, was sent to the First National Bank of Camden, for collection, but that said lumber company had not paid the same.

The trial court, in effect, found that it was the intention of all the parties, and that they so understood it, that said car was shipped under the terms of the through bill of landing, and that the delivery of the car at Ogemaw, a prepay station, on the side track, was a complete delivery; and gave judgment for defendant. There was evidence to sustain the court in its findings, and the judgment is therefore affirmed.

HUGHES and RIDDICK, JJ., not participating