# Southern Railway Company v. Barclay.

## Loss of Goods.

(Decided May 30, 1911.   56 South. 26.)

1. *Carriers; Freight; Delivery; Contract.*—Where freight was destined to a station at which the railroad company had no agent or depot, it was competent for it to contract with the shipper that when the freight was delivered on the siding it should be considered delivered to the consignee, and afterwards held at his risk.

2. *Same; Control by Shipper.*—Where a carload of goods were shipped into a siding at the station of destination which was a station without a regular agent or depot and were taken charge of by the shipper, and partially unloaded and the car locked for the night pending the completion of removal the following day, the delivery was complete, and the carrier was not liable to the shipper for damages to the goods caused by rain on the night after he began unloading.

APPEAL from Jackson Circuit Court.

Heard before Hon. W. W. HARALSON.

Action by D. P. Barclay against the Southern Railway Company for damages to freight by rain. Judgment for plaintiff and defendant appeals. Reversed and remanded.

[Southern Railway Co. v. Barclay.]

LAWRENCE E. BROWN, for appellant.  There is but one legal question in this case, and that is whether the liability of the carrier ceased when the car was detached from the train, and left at the siding, its destination and was partially unloaded by the shipper.  It is insisted that the delivery was complete and that the defendant was not liable.—*S. & N. R. R. Co. v. Wood,* 66 Ala. 167; *C. & W. Ry. Co. v. Ludden & Bates,* 89 Ala. 612; 35 Ala. 209; 128 Ala. 167; 133 Ala. 486; 39 L. R. A. 535.

VIRGIL BOULDIN, for appellee.  The defendant could not stipulate against liability as herein attempted.— Sec. 5546, Code 1907; 6 Cyc. 409; *S. & N. R. R. Co. v. Wilson,* 28 Ala. 587; *So. Ry. Co. v. Levy,* 144 Ala. 614; *L. & N. v. Cowherd,* 120 Ala. 57.

WALKER, P. J.—This is an action brought by the appellee against the appellant to recover damages for alleged injury to a piano and a lot of household goods received by the defendant as a common carrier, to be delivered at a point on its own line; the complaint alleging that the articles were "damaged in transit by leaky roof of car."  By several special pleas, varying somewhat in their averments, the defendants set up, as a defense to the suit, that the bill of lading under which the shipment was made contained a provision to the effect that property destined to a station at which there is no regularly appointed agent, when delivered on private or other sidings, shall be at the owner's risk, after the car is detached from the train; that Paint Rock Bridge, the place of destination named in the bill of lading, was a place where the defendant had no warehouse, or regularly appointed agent, of which fact the plaintiff had knowledge at the time the goods were shipped; and that the alleged injury occurred after the car containing the

goods had been detached from the train and left on the siding at the place of destination, and after the plaintiff had removed a part of the goods from the car. The plaintiff's demurrers to these special pleas were sustained, and the case was tried on issue joined on the plea of the general issue to the complaint. The evidence showed that the articles claimed to have been damaged, together with other articles, were shipped from Scottsboro to Paint Rock Bridge, a point on the defendant's line, where to the knowledge of the plaintiff at the time of the shipment, there was no depot or warehouse and no agent of the defendant stationed, but where there was a sidetrack which was used for loading timber and lumber. The car containing the articles in question was switched into that sidetrack. That was about noon on the day on which the shipment was made. The plaintiff was present at the time, and partially unloaded the car that afternoon. That evening it commenced raining, and it rained all that night and during the next day. The plaintiff locked the car when he left with his last load during the afternoon of the day of its arrival. At that time the articles in the car were in good condition, but when the plaintiff returned to the car and opened it on the second day thereafter he found the goods wet, and he offered proof tending to show the consequent damage to some of them. By requesting the giving of the general affirmative charge in its favor, and also several special written charges, all of which were refused, the defendant raised the question of the right of the plaintiff to recover on the evidence offered.

In the case of *South & North Ala. R. R. Co. v. Wood,* 66 Ala. 167, 41 Am. Rep. 749, it was decided, after full consideration, that a railroad company is not required by law to keep a warehouse or depot at every station

along its line of road, and may lawfully stipulate, either expressly or by implication, that it will assume no liability as a warehouseman at a "flag station," where it has no depot nor agent; and that when the consignee is fully advised, at the time of shipment, that the company has no depot nor agent at such station, and it is not shown that the exigencies of its business required that it should have an agent or depot at that place, the liability of the company as a common carrier terminates with the safe delivery of the goods on the side track at that point, and it assumes no liability as a warehouseman. In the opinion in that case, it was said: "The delivery of the car load of corn on the side track at 'Smith's Mills' terminated the liability of the appellant. It would be unreasonable to require the railroad company to employ a special agent to keep the corn in further custody, unless there was an agreement, express or implied, to do so. When the consignee was informed that there was no agent of the company there, he was virtually told that there would be no custody of the goods by the carrier after arrival. The shipment, after such knowledge, was an assent, on the part of the shipper, to the implied conditions."

In its disposition of that case, the court clearly recognized the right of the shipper and the carrier, in the circumstances attending a shipment to such a destination, to determine by contract what should constitute a delivery by the carrier; and, in the absence of any specific provision on the subject in the contract of shipment, it was implied, from the mere fact that the shipper knew that the carrier had no agent at the "flag station" to which the car of corn was shipped, that he agreed that a safe delivery of the car on the side track at that point should have the effect of terminating the liability of the railroad company as a carrier, and of

exempting it from any liability as a warehouseman. When the same case was before the court on a second appeal (*South & North Ala. R. Co. v. Wood,* 71 Ala. 215, 46 Am. Rep. 399), it was again recognized that, so far as any question of liability on the part of the carrier to the shipper was concerned, its control over the car and its contents was to be regarded as having ended when the car was placed on the side track at the point of destination, and that there was no liability on its part for any loss of the contents of the car thereafter occurring.

In the case at bar, there are the additional features, absent from the above-mentioned case, of the express stipulation in the contract of shipment that the property should be at the owner's risk, after the car should be detached from the train, upon its delivery on the siding at the point of destination, and that the consignee assumed actual custody and control of the goods shipped, and removed a considerable portion of them before any damage was sustained. It would seem to involve a withholding of the due effect to be accorded to the rulings in the cases above cited to decide that, under such contract of shipment in this case, anything more than placing the car on the side track at the point of destination and detaching it from the train could be required to make a good delivery and to relieve the carrier from all further responsibility on account of the shipment. Authorities in other jurisdictions support the conclusion that what was done in this case constituted a complete delivery under the stipulation.—*Allam v. Pennsylvania R. Co.,* 183 Pa. 174, 38 Atl. 709, 39 L. R. A. 535; *Hill v. St. Louis Southwestern R. Co.,* 67 Ark. 402, 55 S. W. 216; 4 Elliott on Railroads (2d Ed.) § 1521. Under the authorities, it is not to be doubted that, in the circumstances of the shipment involved in

the case at bar, the parties could by contract provide that what was in fact done by the carrier at the point of destination should constitute a good delivery, and that the carrier could decline to assume any duty or responsibility as a warehouseman after the carriage contracted for should be completed.

But, on the facts of this case, the carrier is not put to a reliance, for the support of its defense, upon the claim that what it did constituted a complete delivery under the terms of the contract of shipment. The consignee cannot take charge of the goods as completely delivered and continue to hold the carrier to a liability, either as carrier or as a warehouseman. This is what the consignee in the case at bar is undertaking to do. When the car containing his goods was left on the siding at the point of destination, he assumed complete control of it and of its contents. Without the carrier or any one representing it having anything further to do with the matter, he proceeded to unload the goods, and when, to suit his own convenience, he did not complete the unloading that day, he did not, actually or constructively, leave the car or its contents in the charge or control of the carrier, but continued his control by locking the car with a lock of his own. If thereafter any one for the carrier had desired to protect the contents from the damage from rain to which they were exposed by reason of the leaky condition of the roof of the car, entrance to the car would have been prevented by the precaution taken by the consignee to maintain his own control of the situation. What he did amounted to an acceptance by him of the leaving of the car on the siding as a complete delivery. The consignee was entitled to but one delivery by the carrier. By resuming control of his goods, he released the railway company from any further responsibility,

whether as a carrier or as a warehouseman.—*Ayres v. Morris & Essex R. Co.*, 29 N. J. Law, 393, 80 Am. Dec. 215; *Jewell v. Grand Trunk Ry.*, 55 N. H. 84, 93; 4 Elliott on Railroads (2d Ed.) §§ 1521, 1531. He was not entitled to hold the railway company for damage to some of his goods by a rain occurring after he had accepted a delivery of them, whether or not, before such acceptance, he might have raised a question as to the act of the carrier constituting an effectual delivery under the terms of its contract. Without passing upon the questions raised by the demurrers to the pleas, it is enough to say that the evidence offered did not tend to prove that the property of the plaintiff "was damaged in transit by leaky roof of car," as alleged in the complaint, and that the general affirmative charge in its behalf requested by the defendant should have been given.

Reversed and remanded.