## Brennfleck v. Mobile & Ohio R. R. Co.

### Damage for Loss of Goods.

(Decided December 4, 1913.　63 South. 954.)

*Carriers; Goods; Delivery.*—The consignee having been informed at the time of shipment that the point of destination was a non-agency station, and that delivery would be made on a siding, and having accompanied the shipment, and been present when the car was placed on the side track, and assumed control of the goods. and removed part of them, but having failed to remove the balance merely for lack of conveyance, the subsequent burning of the car and destruction of the goods fixed no liability on the carrier as under the facts there was a delivery as regards liability of the carrier for non-delivery.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by Charles J. Brennfleck against the Mobile & Ohio Railroad Company, for failure to deliver certain goods. Judgment for defendant and plaintiff appeals. Affirmed.

GREGORY L. & H. T. SMITH, for appellant. Proof of the delivery of the goods to the carrier, and their loss makes out a prima facie case.—*Southern Express Co. v. Ramey,* 164 Ala. 270. The cases of *S. & N. A. R. R. Co. v. Wood,* 66 Ala. 171, and *Southern Railway Co. v. Barclay,* 1 Court of Appeals, discussed and distinguished from the case at bar. Liability for the loss of the

goods complained of, controlled by the first section of the conditions of the bill of lading. The court's ruling was based upon the cases of the *South & North Alabama Railroad Company v. Wood*, 66 Ala. 167, and the *Southern Railway Company v. Barclay*, 1 Court of Appeals 352. Where the conduct of the defense contains no suggestion that its connection with the transaction is denied, a motion to rule out the evidence or a general charge to find for the defendant will not be sustained by want of evidence on that point.—*B'ham Ry. L. & P. Co. v. Taylor*, 152 Ala. 109; *B'ham Ry. L. & P. Co. v. Leach*, 59 South. R. 359; *Tombigbee, etc., R. R. Co. v. Still*, 60 South. Rep. 546.

CARL FOX, and STEVENS, McCORVEY & DEAN, for appellee. Proof of the delivery of the goods to the carrier, and their loss, does not make out a prima facie case, except in those cases where it is proved that the carrier has failed to make delivery.—*Southern Express Co. v. Ramey*, 164 Ala. 206; *S. & N. A. R. R. Co. v. Wood*, 66 Ala. 167; *Southern Railway Company v. Barclay*, 1 Ala. App. 348. The court properly granted the appellee's (defendant's) motion to rule out all of the evidence, because, under the terms of the bill of lading sued on, the delivery of the car on the siding at a non-agency station, the point of destination, completed the delivery, and property was then at owner's risk.—*S. & N. A. R. R. Co. v. Wood*, 66 Ala. 167; *Southern Railway Co. v. Barclay*, 1 Ala. App. 348. Where freight was destined to a station at which the railroad company had no agent or depot, it was competent for it to contract with the shipper that when the freight was delivered on the siding it should be considered delivered to the consignee, and afterwards held at his risk.—*S. & N. A. R. R. Co. v. Wood*, 66 Ala. 167; *Southern Rail-*

*way Co. v. Barclay,* 1 Ala. App. 348. the appellant has totally failed to distinguish the case at bar from the case of *S. & N. A. R. R. Co. v. Wood,* 66 Ala. 167, and from the case of *Southern Railway Company v. Barclay,* 1 Ala. App. 348. The court properly granted the appellee's (defendant's) motion to rule out all of the evidence, because the evidence fails to show any connection whatever between the appellee (defendant) and the loss complained of, and plaintiff (appellant) therefore failed to make out a prima facie case.—*Gulf City Construction Co. v. L. & N. R. R. Co.,* 121 Ala. 621; *Talladega Ins. Co. v. Peacock, Adm'r,* 67 Ala. 253; *Stanton v. Baird Lbr. Co.,* 132 Ala. 635; *Southworth, Admx. v. Shea,* 131 Ala. 419.

MAYFIELD, J.—Appellant sued appellee, as a connecting and delivering carrier, for failure to deliver a lot of goods. The goods were delivered to the Illinois Central Railroad Company, of Illinois, to be delivered at Parker's Station, in Alabama. The Mobile & Ohio Railroad Company was the connecting and delivering carrier; Parker's Station, the point of destination, being a nonagent station on the Mobile & Bay Shore Railway, a line of road controlled and operated exclusively by the Mobile & Ohio Railroad Company. The complaint was practically in Code form (form 15, p. 1187, vol. 2, Code of 1907).

The original complaint was in substance as follows: "Plaintiff claims of the defendant, a corporation, $690.05 for that heretofore, to wit, on the 10th day of May, 1912, plaintiff delivered at Grand Crossing, Ill., certain property belonging to him, and hereinafter described, to the Illinois Central Railroad Company, to be by it, as a common carrier, and by its connecting common carriers transported, for a reward, to Parker's

Station, Ala., to a point on the defendant's railroad, and there delivered to the plaintiff, and said property was delivered, in due course of transportation, to the defendant as a common carrier, and by it, as such, transported to Parker's Station, Ala., but was not delivered by it to the plaintiff, but was destroyed by fire while still in the possession of the defendant as such common carrier." The complaint was subsequently amended by claiming $2,741.14 as damages. There was further and subsequent pleading, but no question is raised thereto.

The only question raised is whether or not the trial court committed reversible error in excluding all of plaintiff's evidence on defendant's motion to that end. As before shown, the action was on a bill of lading for failure to deliver goods shipped. The bill of lading was introduced in evidence, and it was shown by the plaintiff that the defendant, the Mobile & Ohio Railroad Company, received the goods in question from the Illinois Central Railroad Company, and that the defendant carried the car which contained the goods to destination, Parker's Station, and there placed it on the switch and left it in charge of the plaintiff; that plaintiff partly unloaded the car, taking therefrom a horse and sheep, but that thereafter, in the nighttime, and about 12 or 14 hourse after their arrival, the goods were destroyed by fire. The cause of the fire was not shown. The plaintiff's contention was that there was a failure to deliver and consequently a breach of the contract of shipment. In other words, the action was ex contractu and not ex delicto.

The material facts are thus stated by appellant's counsel in brief: "Parker's Station was one at which there was no agent, and the appellant was told, at the time of the shipment, that it was a nonagency station,

but was not told that delivery would be made upon a siding. The car containing the goods was placed upon the side track at Parker's Station about 11 o'clock a. m., but nothing was said to appellant about it or about the goods being ready to be unloaded, nor was there any provision in the bill of lading requiring the appellant to unload the car. The appellant traveled in the car from the original point of shipment, and, when the car was placed on the side track, he took a horse and some sheep therefrom, and tried to employ some one to remove the other property, but could get no one to do so. He, however, arranged to have some one take the goods the next morning. That night the goods were destroyed by fire. The value of the goods was between $1,700 and $1,800. This was substantially all of the evidence, and upon motion of the appellee the court ruled out all of the evidence, and the plaintiff excepted and took a nonsuit with a bill of exceptions on account of the adverse rulings of the court."

We agree with the trial court that the plaintiff by his proof failed to make out the case alleged in the complaint. The gravamen of the complaint was a failure of the common carrier to deliver the goods according to contract of shipment; and the proof wholly failed to substantiate this material allegation. The proof was without dispute that the goods were carried to the point of destination and placed upon a side track and left in charge of the plaintiff, who unloaded a part of the shipment, and would have unloaded the remainder if he could have obtained wagons or conveyances in which to carry them away.

Under the written contract of shipment, and so far as any evidence tends to show, the carrier had done all it agreed to do. The proof showed that the property was actually delivered to the plaintiff; that he assumed

control of it, removed a part thereof from the car, and could have removed all but for the lack of conveyances. The carrier was under no contract or duty of course to furnish wagons or conveyances and was therefore not responsible for the plaintiff's failure to obtain such means for the removal of the goods from the car.

It is stated that the trial court relied upon the cases of *South & North Alabama Railroad Co. v. Wood,* 66 Ala. 171, 41 Am. Rep. 749, and *Southern Railway Co. v. Barclay,* 1 Ala. App. 352, 56 South. 26. These cases we think fully support the action of the trial court in declining to submit the case to the jury.

The complaint and the facts in *Wood's Case,* above cited, were very similar to the complaint and the facts in this case; and in that case this court had to say: "As shown by the evidence, it was distinctly understood, at the time of the shipment of the corn in controversy, that the South & North Alabama Railroad Company had no agent at 'Jemison Station,' which was a mere 'flag station,' to which the car load of corn was consigned. It was equally well made known that there was neither agent nor station at 'Smith's Mills,' where it was agreed that the corn might be delivered. The question presented for our decision is: Did the safe delivery of the car, containing the corn, on the side track at a station where it was agreed to be received terminate the liability of the railroad company as a common carrier? The law does not require of railroad companies the absolute duty to construct or keep warehouses at every station along their route of travel or transportation. They are required only to do the best their means will enable them to do, under existing circumstances, and must act in accordance with the reasonable necessities of their usual business.—Red. on Car. § 120. We can see no reason why a railway com-

pany, acting as a common carrier, cannot stipulate, by a contract express or implied, that their liability as a carrier shall terminate with a delivery at a particular point, and that they will assume no liability at all, in such case, as warehousemen. If the consignee is fully advised, at the time of shipment, that the company has no agent at the particular station or place to which the consignment is made, and the failure to employ such agent is not shown to be unreasonable in view of the condition of the company's business, there is, in the absence of rebutting circumstances, an implied consent that the carrier's responsibility shall be dissolved, when he has done all that the nature of the case permits him to do, according to the reasonable and proper usages of his business. The delivery of the car load of corn on the side track at 'Smith's Mills' terminated the liability of appellant. It would be unreasonable to require the railroad company to employ a special agent to keep the corn in further custody, unless there was an agreement, express or implied, to do so. When the consignee was informed that there was no agent of the company there, he was virtually told that there would be no custody of the goods by the carrier after arrival. The shipment, after such knowledge, was an assent, on the part of the shipper, to the implied conditions."

The case at bar is stronger in favor of the carrier than *Wood's Case,* above quoted from, for the reason that here the consignee accompanied the shipment and was present when the car was placed on the side track and assumed control of the goods.

We cannot agree with counsel that the case at bar is distinguishable from the two above-cited cases, or that the statutes have changed the law in so far as it bears on a proper decision of the questions raised on this appeal. In fact, *Barclay's Case,* 1 Ala. App. 352, 56

South. 26, was decided after the passage of the statutes referred to, and therein *Wood's Case was* approved and followed. In *Barclay's Case,* it is said: "In the case of *South & North Ala. R. R. Co. v. Wood,* 66 Ala. 167, 41 Am. Rep. 749, it was decided, after full considera- tion, that a railroad company is not required by law to keep a warehouse or depot at every station along its line of road, and may lawfully stipulate, either express- ly or by implication, that it will assume no liability as a warehouseman at a 'flag station,' where it has no depot nor agent; and that when the consignee is fully advised, at the time of shipment, that the company has no depot nor agent at such station, and it is not shown that the exigencies of its business required that it should have an agent or depot at that place, the liability of the com- pany as a common carrier terminates with the safe de- livery of the goods on the side track at that point, and it assumes no liability as a warehouseman. * * * When the same case was before the court on a second appeal (*South & North Ala. R. R. Co. v. Wood,* 71 Ala. 215, 46 Am. Rep. 399) it was again recognized that, so far as any question of liability on the part of the car- rier to the shipper was concerned, its control over the car and its contents was to be regarded as having ended when the car was placed on the side-track at the point of destination, and that there was no liability on its part for any loss of the contents of the car thereafter occurring."

These cases, we think, are correct expositions of the law on this subject and are strictly applicable to the facts in this case and are conclusive against any lia- bility on the part of the defendant, under the pleading and the proof. It should be noted and remembered, however, that this action is against the defendant as a carrier and not as a warehouseman. The action is on a

[Brennfleck v. Mobile & Ohio R. R. Co.]

contract of shipment and is not in tort for a breach of duty by a carrier or by a warehouseman. It therefore follows that, however erroneous might be the ruling excluding the plaintiff's evidence, it was without injury to the plaintiff. The court should have given the affirmative charge for the defendant if it had been requested so to do. This was not done, because the plaintiff took a nonsuit on account of the adverse ruling excluding all of his evidence.

This court has never approved the practice pursued in this case, of excluding evidence which is relevant and competent; but the court has declined to reverse, on account of such practice, unless injury resulted therefrom to the party complaining.

In the opinion of the writer (but not of the court) this practice of excluding all the plaintiff's evidence ought not to be tolerated, because it is in violation of our statutes. We have on the statute books laws passed for the very purpose of preventing a court from nonsuiting a plaintiff or, in other words, for the purpose of preventing compulsory nonsuits. This practice of which I complain, is in my judgment an evasion, if not a violation, of these statutes, and for this reason should never be tolerated nor sanctioned. The writer has heretofore referred to these statutes and given a history of this practice in this and other states in his concurring opinion in the case of *Scales v. Central Iron & Coal Co.,* 173 Ala. 646, 55 South. 821.

Affirmed.

McClellan, Sayre, and Somerville, JJ., concur.