89  534
96  259

# Louisville & Nashville Railroad Co. v. Gilmer.

### *Action against Common Carrier, for Lost Goods.*

1. *Delivery of goods at flag-station.*—Where a car-load of brick is received by a railroad company, as a common carrier, for transportation to a flag-station on its road, where it has no side-track, no warehouse or depot, and no agent, it is its duty to unload and deliver the bricks at that place while the cars are waiting, although the consignee is not there to receive them, such delivery being at his risk.

2. *Same; acceptance of delivery at further station; proof of agency.* The consignee may waive delivery at the named station, and does waive it by acceptance at a further station; but the fact that several negro tenants on his plantation inquired for the bricks at the further station, unloaded the car, and deposited them on the ground, does not establish such waiver and acceptance by him, without other proof of their agency.

3. *Measure of damages.*—In an action against a common carrier, to recover damages for the failure to deliver goods at the place to which they were consigned, the charges having been paid in advance, the plaintiff is entitled to recover the value of the goods at that place on the day on which they should have been delivered.

APPEAL from the Circuit Court of Lowndes.

Tried before the Hon. JOHN MOORE.

This action was brought by George N. Gilmer against the appellant, as a common carrier, to recover damages for the defendant's failure to deliver a car-load of brick shipped for defendant from Montgomery, consigned to him at "Cloverfield Sta."; and was commenced before a justice of the peace, on the 16th March, 1888. On appeal to the Circuit Court, the court charged the jury, that they must find for the plaintiff, if they believed the evidence; and that he was entitled to recover the value of the brick at Cloverfield, with interest thereon. The defendant excepted to each part of this charge, and here assigns the same as error. The opinion states the facts.

WATTS & SON, JONES & FALKNER, for appellant.

GIRARD COOK, *contra.*

McCLELLAN, J.—A car-load of brick was shipped by appellant's line of railway on Dec. 14, 1886, from Mont-

gomery, consigned to appellee at "Cloverfield Sta.," as appears by the bill of lading. What manner of place Cloverfield was does not appear, except that the residence of appellee was within two hundred and fifty yards of it, and the railroad company had no depot, warehouse, agent, or even side-track there. The car containing the brick was promptly transported to the point of consignment on the morning of the 14th; but the consignee was not there, nor had other person there to receive the goods, though it was shown that he had persons there for that purpose each of the two preceding days, when defendant's local freight train passed. After waiting from five to ten minutes, during which the engine whistle was repeatedly sounded without any one appearing to receive the brick, the train moved on to Morganville, one mile beyond Cloverfield, a regular station of the road, having a depot, agent, &c., and there side-tracked, and left the car containing plaintiff's brick. It further appears that, "a few hours after the said car with the brick had been left on side-track at Morganville, some negroes, who were tenants on plaintiff's plantation, which extended to Cloverfield, came to Morganville, and asked the depot-agent at that place if Mr. Gilmer's brick had come, and, on being pointed out the car on which the bricks were, the said negroes unloaded the car, and put the brick on the ground." Gilmer was not at home on that day, but two days afterwards he went to Morganville, and refused to receive the brick unless they were sent back to Cloverfield. This the defendant refused to do, and thereupon Gilmer brought this suit to recover the value of the brick, as upon a failure of the common carrier to deliver them to him according to the contract of shipment.

The main inquiry in the case, as it is now presented on an exception to the affirmative charge given for the plaintiff below, involves a consideration of defendant's duty as to delivery at Cloverfield, in the absence of the consignee, or any person representing him, under the peculiar facts of the case. There was no depot; the brick could not be stored. There was no agent, in whose charge they could have been left. There was no side-track, and hence the car could not be left there. The only delivery possible, therefore, was to unload the brick, and leave them on the ground in care of no one, and even without notice to the consignee, or marks of identification by which he might afterwards come to a knowledge of their arrival and take possession of them.

Such a delivery is, to say the least, most unusual and extra-ordinary. No case involving its like is to be found in the books, so far as an exhaustive examination discloses. Yet, we think that just this manner of delivery was authorized and required, and would have been justified by the facts of this transaction, and the contract of affreightment entered into in view of those facts. It must have been in the contemplation of both parties that the bricks should be unloaded at Cloverfield while the train waited, since leaving the car there on the main and only track was out of the question. Ordinarily, it is the duty of the railway company to unload goods from its cars, and place them in its warehouse for delivery to the consignee; and when there is an omission to do this, it is generally for the latter's convenience and benefit. In a case like this, where it is not only necessary to a delivery to the consignee, but also to the conduct of the carrier's other business, that the goods should be discharged from the car, we do not doubt but that it is the company's duty, and not that of the consignee, to unload the consignment from its vehicles. The only purpose to be subserved by the presence of Gilmer, on the arrival of the car containing the brick, was one of benefit alone to him, and which he could avail himself of, or not, without failing in any duty he owed the carrier. If he chose to waive this benefit, and take such risks as were involved in his property being left unprotected, and even without marks of identification, he had the right to do so. He did waive this right to be present on the arrival of the consignment, and consented to take all the risks incident to the only kind of delivery that could be made at Cloverfield, when he became bound by a bill of lading which provided for delivery at a point where it could only be effected by unloading the car on the ground while the train waited. The principle involved is the same as if there had been a side-track, but no depot or agent at Cloverfield. In that case, a good delivery would have been made by leaving the car on the side-track in the absence of Gilmer, or any representative of his, and without any notice to him. This court has settled the doctrine, that this latter mode of delivery is effectual, and acquits the carrier, because it was the only mode of delivery within the carrier's power to make, under a bill of lading to a point where it had no agent or depot. And the same consideration leads to a like conclusion here. The fact, therefore, that Gilmer was not present to receive the brick, did not

[Louisville and Nashville R. R. Co. v. Gilmer.]

relieve the defendant from its duty to deliver them at that time and place by leaving them on the ground. The risks of such a delivery was Gilmer's, not the carrier's.—*S. & N. Ala. R. R. Co. v. Wood*, 66 Ala. 167.

Notwithstanding defendant's failure to deliver the brick at Cloverfield, if the plaintiff subsequently received them at Morganville, he thereby waived performance of the contract as to delivery at the former place, and lost his right of action for the carrier's default in that behalf. If there was any evidence in the case, therefore, tending to show that delivery was accomplished at Morganville, the general charge for plaintiff should not have been given. We have no doubt but that the action of the negroes in unloading the car and stacking the brick on the ground amounted to a delivery to Gilmer, if they were his agents. The question on this part of the case, then, is simply whether there was any evidence from which the jury might have legitimately inferred that they acted for, and by authority of the plaintiff. There is no proof of such authority. On the contrary, it appears that, on the two preceding days, Gilmer had expected the brick to be delivered at Cloverfield, and that he was not at home on the 14th, and could not then have authorized the negroes to receive the brick at Morganville. There is nothing in the fact that they were his tenants, which went to show he had authorized them to receive the consignment. The only remaining fact is, that they did an act which was without authority, unless they had a right to represent Gilmer. Agency can not be proved in this way, which is no more than to assume the act to be authorized from the fact that it was performed.—*Reynolds v. Collins*, 78 Ala. 94. The jury had no right to look to this fact as a basis for the inference of agency. The charge did not withdraw any evidence from the jury which it was proper for them to consider, and it was free from error.

It was in evidence that the freight charges were paid in advance. The plaintiff was, therefore, entitled to recover the value of the brick at Cloverfield, on the day they should have been delivered.—*B. & O. R. R. Co. v. Humphreys*, 9 Amer. &. Eng. R. R. Cases, 331 (n. 344); *S. & N. Ala. R. R. Co. v. Wood*, 72 Ala. 457.

The judgment of the Circuit Court must be affirmed.