J. S. Allam v. The Pennsylvania Railroad Company, Appellant.

*Railroads—Common carriers—Modification of common-law liability—Contract—Public policy—Custom.*

As a general rule a common carrier must give to the consignee of goods, notice of their arrival at the point of destination.

While a common carrier cannot stipulate for a release from the consequences of his own negligence or fraud, yet he can modify his liability as such so far as to provide that notice of the arrival of goods need not be given at small stations where no station house has been built and no freight agent located.

A contract that at such stations the goods shall be at the " risk " of the owner until loaded into cars, and when unloaded therefrom is not against public policy and will be enforced.

Where goods are carried under such a contract all responsibility for protecting the same after the goods reach their destination is assumed by the consignor.

Argued April 1, 1897. Appeal, No. 78, Jan. T., 1897, by defendant, from judgment of Superior Court, Nov. T., 1896, No. 21, affirming the judgment of C. P. No. 4, Phila. Co., March T., 1894, No. 1329, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Reversed.

Assumpsit for lumber damaged in transit.

Appeal from the Superior Court. See 3 Pa. Superior Ct. 335 (1897), where most of the material facts will be found.

Other facts appear by the opinion of the Supreme Court.

*Error assigned* was in affirming judgment of the court of common pleas.

*George Tucker Bispham*, with him *John Hampton Barnes*, for appellant.—It is not in all cases incumbent upon a carrier to give notice to a consignee of the arrival of his goods : South & North Alabama R. R. v. Wood, 66 Alabama, 167 ; 9 Am. & Eng. R. R. Cases, 419 ; Southwestern R. R. Co. v. Felder, 46 Georgia, 433.

If the carrier must give such notice, may not this duty be

waived by the mutual understanding of the parties; and may not such understanding be shown by (1) general custom, (2) course of dealing, and (3) express contract? Hutchinson on Carriers, sec. 375; McMasters v. R. R., 69 Pa. 374; 9 Am. & Eng. R. R. Cases, 425; Buck v. P. R. R., 150 Pa. 170; Willock v. R. R., 166 Pa. 184; Penna. R. R. v. Raiordon, 119 Pa. 577; Lang v. Penna. R. R., 154 Pa. 342.

*E. Hunn Hanson*, with him *Alfred J. Wilkinson*, for appellee. —The carrier is bound to notify the consignee of the arrival of his goods and allow sufficient time for their removal: McDonald v. Western R. R. Corp., 34 N. Y. 497; McMillan v. Mich. S. & N. I. R. R., 16 Mich. 79; Rice v. Boston & Worc. R. R. Corp., 98 Mass. 212; Tanner v. Oil Creek R. R., 53 Pa. 411; Shenk v. Phila. Steam Prop. Co., 60 Pa. 109; N. Penna. R. R. v. Commercial Bank, 123 U. S. 727.

In the United States Courts, as well as in those of Pennsylvania, the most formal contract inter partes (a kind of contract that rarely, if ever, exists in this connection) or a clearly expressed condition by the carrier defining the limitation of his public duty, will be disregarded as though it did not exist, if the essential part of the employment is attempted to be obviated: Farnham v. C. & A. R. R. Co., 55 Pa. 53; Empire Transit Co. v. Oil Co., 63 Pa. 14; N. Y. Cent. R. R. v. Lockwood, 17 Wall. 357.

OPINION BY MR. JUSTICE WILLIAMS, November 8, 1897:

The judgment appealed from in this case was rendered by the Superior Court. Four of the learned judges of that court concurred in the judgment. Three of them dissented from it. The questions that came under consideration are of public importance; and that they are by no means free from difficulty is shown by the wide differences of opinion entertained as to them by the members of the Superior Court. They may be stated thus: first: is it an invariable rule in this state that a common carrier must give to the consignee of goods notice of their arrival at the point of destination? Second: may not special circumstances, a general custom or usage of business, or a special contract, modify or relieve against this duty? Third: if the second question be answered in the affirmative, is not this

case upon the evidence one in which such modification should be held to exist? The evidence shows substantially that along the lines of the defendant's railroad there are small stations known as " prepaid stations," at which no depot building has been erected and no freight agent located. The business at such stations will not ordinarily justify the expense which such conveniences would involve ; but the railroad company will accommodate people near such stations by delivering goods consigned to them on a platform or on the ground as the case may be. Among such " prepaid stations " was one called Strafford. The only convenience at Strafford for the receipt and delivery of goods was a platform by the side of the road. There was no shelter, and no employee of the company to give notice of the arrival of goods at this station, up to the seventh day of October, 1893. It is alleged, and evidence was given upon the trial to show, that a custom exists among the railroads of the country for consignees of goods at such stations to look out for the arrival of their parcels and take charge of them when they are set down from the train. It is not difficult to see how such a custom should grow out of the necessities of the situation in which both shippers and the carrier find themselves at such stations. Shippers know, for they are bound to know, that at a prepaid station they cannot expect notice from the carrier, nor attention or shelter for their goods, yet their wants are such that they may prefer to accept the risks rather than be compelled to go to some more remote station where shelter exists and employees are abundant, to receive their goods. When persons so situated elect to have goods shipped to them at a prepaid station there is no hardship in holding that they thereby assume to do for themselves what they know the railroad company cannot do for them. If we hold that a carrier is bound to give notice to the consignee of the arrival of goods at such stations, and keep them safely for a reasonable time until they can be taken away, we simply compel the railroad company to abandon all such stations and deprive the neighborhood of the accommodation which they afford. As there is no shelter there the company cannot keep the goods for the owner. As there is no employee at the station notice cannot be given.

The carrier must transport the goods in the only way he can, or refuse to transport them to a prepaid station. If, therefore,

the general rule as to notice be as contended for by the plaintiff, where the ordinary facilities exist, we must, nevertheless, admit the existence of some exceptions growing out of the special circumstances under which the carriage is undertaken, and out of the customs that have grown up for the mutual advantage of both shipper and carrier. But in this case we have an express contract entered into because of the character of the station and the refusal of the carrier to assume risks against which he cannot protect himself at the place for the delivery of the goods. In the bill of lading of February 22, 1894, there is the following provision: "When merchandise is destined to or from way stations and platforms where station buildings have not been established by the carrier, or where there are no regularly appointed freight agents, it shall be at the risk of the owner until loaded into the cars and when unloaded therefrom; and when received from or delivered on private turnouts it shall be at the owner's risk until cars are attached to and after they are detached from the train." The goods were received and transported under the terms of this agreement by which the consignors undertook to receive the goods when they were put upon the platform at Strafford and care for them at their own risk. If this was not done it was not the fault of the carrier. He was to carry only, and all responsibility for protecting the goods, whether from thieves or from the weather, after reaching their destination, was assumed by the consignor, the owner. This contract the Superior Court held to be void because against public policy and, cited as authority for such holding, among other cases, Willock v. The Railroad Co., 166 Pa. 184. But the cases cited are not exactly in point.

In Willock's case the question was whether the carrier could protect himself by a contract against the consequences of his own negligence or fraud. The head note of the reporter is in these words: "A common carrier cannot stipulate for a release from the consequences of his own negligence or fraud." The case does not hold that he may not by contract so modify his common law liability as to enable him to serve small communities where no station house has been built and no employee located. Such stipulations have been upheld in many cases, where no effort was made to shield the carrier from his own negligence, and they have been held not to violate any rule of

public policy: Atwood v. The Reliance Transportation Co., 9 Watts, 87; Bingham v. Rogers, 6 W. & S. 495; Laing v. Colder et al., 8 Pa. 479; Am. Express Co. v. Sands, 55 Pa. 140; Farnham v. Camden & Amboy R. R. Co., 55 Pa. 53; Clyde v. Hubbard, 88 Pa. 358; Railroad Co. v. Raiordon, 119 Pa. 577. The special contract relied on in this case does not stipulate for relief from the consequences of the negligence or fraud of the carrier. It recognizes the existence of circumstances that make it practically impossible for the carrier to discharge all the common law duties of a carrier at Strafford, and that induce him to refuse freight to that station except upon special terms. It agrees in view of these circumstances to accept such service as the carrier can render, viz: The simple transportation of the goods, and to supply what the carrier is not prepared to supply, the care and protection of the goods when they reach the platform.

The contract limits the liability of the company to what it undertakes to do, and relieves it of responsibility for all that lies beyond the mere transportation and setting down of the goods. It is asserted that the goods were unloaded during a storm, and were not protected by the carrier from the weather. By the contract the consignor was to look after the goods on their arrival. It was his business to provide the shelter. He knew the company had none. He had agreed to take the risk of caring for them. When the accommodation train came that morning at the usual hour for its arrival the consignee was not at the platform. His foreman was not there although he was expecting the goods, and had notice from the consignor of their shipment. What should be done? The contract of the carrier had been performed and he had the right to unload the goods. He could not carry them to some station where he had a safe place for storage and leave them there, for Strafford was the point of destination, and the carrier can neither deliver goods at a wrong place nor to a wrong person without liability to the owner. If the goods had filled the car the car might have been left with the goods in it, but the goods did not fill the car. It contained other goods to be delivered to other persons and at other places. The only other way of preserving the goods from the weather would have been to hold the train until the rain was over before unloading the goods, but this was clearly im-

practicable.  The alternative was to unload the goods and leave the consignee to attend to them as the shipper had agreed should be done.  This the carrier did, and we see no negligence in his so doing.  He did all he agreed to do, all he was employed to do, all he had the power to do.  The complaint really is that he delivered the goods at the proper point of destination, in exact compliance with his undertaking.  If after they were put off at the station they were damaged by being left in the rain the consignee and his agent who came a half an hour too late to the platform must take the consequences of the risk assumed when the carriage of the goods was contracted for.

We sustain the assignments of error and reverse the judgment appealed from.  A venire facias de novo is awarded as there is another item in the plaintiff's claim as to which negligence in the manner of unloading is alleged.