# Roos *v.* Philadelphia, Wilmington & Baltimore Railroad Company.

*Subrogation—Insurers and common carriers.*

An insurer can take nothing by subrogation but the right of the assured, and accordingly, when a bill of lading provides that the carrier, when liable for a loss, shall have the full benefit of any insurance upon the goods, upon paying the shipper the loss, such provision limits the right of subrogation of the insurer.

Argued Oct. 12, 1899. Appeal, No. 85, Oct. T., 1899, by plaintiff, in suit of Helen V. Roos against the Philadelphia, Wilmington and Baltimore Railroad Company, from judgment of C. P. No. 4, Phila. Co., March T., 1894, No. 1096, on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by ORLADY, J.

Assumpsit. Before ARNOLD, P. J.

This was an action to recover the value of goods injured on defendant's railroad. The loss was fixed at $1,700. Defendant claimed as a set-off the benefit of the amount of insurance received by plaintiff by virtue of a clause in the bill of lading to the effect, " that the carrier shall have the benefit of any insurance that may have been effected upon or on account of said goods."

[At the trial the court overruled plaintiff's objection to the offer in evidence by defendant of the receipt given by plaintiff to the insurance company for the money received, reciting said receipt, as the same is set out in the opinion of the Superior Court.] [1]

The court charged the jury in part as follows :

[The shipping receipt contains a provision on the back of it, " In case of damage through the negligence of the carrier's servants, the carrier is to have the full benefit of any insurance that may have been effected upon or on account of said goods."

That was a lawful contract; the railroad company had a right to make that agreement, and if you are of that opinion that

the insurance company paid $809.52 as an adjustment of the loss, but with a string to it, nevertheless, it was a payment, and it ought to be deducted out of the $1,700, and the insurance company, which is in this business of taking risks like this, ought to be held. If you do not believe, however, that the insurance company's payment was an adjustment and the payment of a loss, but was a bona fide loan, outside and independent of any insurance matter, then it ought not to be deducted.] [2]

[I refuse defendant's points, except the third, which I have substantially covered in my charge, which is as follows: " That the defendant had the right to contract for the benefit of any insurance effected upon the injured property, and having shown the insurance effected and amount paid thereon, there can be no recovery, except for a sum in excess of the indemnity paid, and unless the damage exceeded that amount, the verdict must be for the defendant."

That I affirm, if you find that the insurance was paid as insurance money in settlement of the loss. If you find it was, it ought to be deducted. If you find it was not, then it ought not to be deducted.] [3]

Verdict for plaintiff for $883.91. Motion for a new trial was refused, ARNOLD, P. J., filing an opinion as reported in 7 Pa. Dist. Rep. 405. Judgment on verdict. Plaintiff appealed.

*Errors assigned* were (1) ruling on evidence. (2, 3) To portions of the judge's charge, reciting same.

*Horace L. Cheyney,* with him *John Frederick Lewis,* for appellant.—The defendant company was not entitled to have deducted from the amount of the damage the sum loaned to the plaintiff by the insurance company of North America under the " borrowed and received receipt."

The liability of the carrier is direct and primary, while the liability of the underwriter is secondary and by way of indemnification only: Ins. Co. v. Railway Co., 63 Tex. 475; Mead v. Ins. Co., 67 Barb. 519; Inman v. Railway Co., 129 U. S. 128.

As a matter of law, if the assured does any act which destroys the insurer's right of subrogation the policy is forfeited: Carstairs v. Ins. Co., 18 Fed. Repr. 473.

The court erred in submitting to the jury the question of

determining from the "borrowed and received receipt" whether an unconditional payment had been made.

The transaction between the plaintiff and the insurance company, by which the latter loaned a sum of money under a "borrowed and received receipt," was not a payment of the loss.

The benefit of insurance is only given to the Northern Central Railway Company, designated as the carrier, and in Camden & Amboy Railroad Company v. Forsyth, 61 Pa. 81, it was held that a similar exception did not inure to the benefit of the connecting carrier, and it is, therefore, submitted that on this ground the court below erred in admitting the "borrowed and received receipt" in evidence.

*Edwin Jaquett Sellers,* with him *David W. Sellers,* for appellee.—The contract of shipment governs the whole route: Elkins v. Transportation Co., 81* Pa. 315; Forepaugh v. Delaware R. R., 128 Pa. 217; Fairchild v. Wilmington R. R., 148 Pa. 527.

Such contracts as these are in the line of the experience of the trading world. No legislative enactment restrains them. So long as parties are sui juris and free, they are to be enforced: Railroad v. Nittany R. R., 171 Pa. 284.

OPINION BY ORLADY, J., April 23, 1900:

The plaintiff delivered certain household goods to the Northern Central Railroad Company at Baltimore, Maryland, for transportation to Greenville, New Hampshire. The Northern Central Railroad Company received the freight charges and delivered the goods to the defendant company, a connecting carrier, but while in transit to their destination on the latter road they were damaged by the derailing of the car in which they were being transported. At the time the goods were received by the Northern Central Railroad Company, it delivered to the consignor a non-negotiable shipping receipt which provided that it would "transport the herein named merchandise with all due care and dispatch to its destination, or to the terminus of its line in the direction of destination, and tender it to the consignee or connecting carrier, . . . . and in case of damage through the negligence of the carrier's servants shall pay a part assessment of same, the carrier to have the full benefit of any insurance that may have been effected upon or on account of said goods."

The Insurance Company of North America insured the plaintiff in the sum of $2,000 against damage to the goods while in transit. After the delivery of the damaged goods to the plaintiff, and before an adjustment was made of the claim for damages against the defendant company, she negotiated with the insurance company and received of it $809.52, for which she receipted in the following form :

"PHILADELPHIA, Oct. 4, 1893.

" Borrowed and received from the president and directors of the Insurance Company of North America of Philadelphia, Pennsylvania, the sum of eight hundred and nine and 52–100 ($809.52) dollars, being a loan pending the investigation and determination whether the loss on sundry articles of household furniture (per schedule on file in the office of this company) damaged and destroyed by derailment of cars at Red Mill crossing, near Elkton, Maryland, on the Philadelphia & Baltimore Railroad, shipped from Baltimore on or about July 15, 1893, bound for Greenville, New Hampshire, is a loss for which the carrier should be held liable, and if the carrier should be held liable, the undersigned agrees to return to the said president and directors the amount thus loaned, when and to the same extent same shall be recovered from the carrier."

The railroad company contended that the claim for damages was much more than it should rightly be, and that the company was entitled, as a credit on the claim when properly adjusted, to the amount which the plaintiff had received from the insurance company. It urged that that money ($809.52) was paid by the insurance company, not as a bona fide loan as it purported to be, but as an adjustment and payment of an ascertained loss under its policy. The jury returned a verdict for the plaintiff in the sum of $883.81, and she brings this appeal.

It is settled that in Pennsylvania a common carrier may limit its liability by the terms of a special contract, but it is equally well settled, as an exception resting on grounds of public policy, that by such a limitation a common carrier may not be relieved from liability for its own negligence: Penna. R. Co. v. Raiordon, 119 Pa. 577 ; Allam v. R. R. Co., 183 Pa. 174.

It was a voluntary act on the part of plaintiff to secure insurance in any amount on the goods and the damage being

shown to be of a nature to make the insurance company liable to her, after payment to her of such damages the insurance benefit clause in the shipping receipt became operative in favor of the railroad company.

The policy of insurance is not printed, and we assume that it was intended to cover loss or damage to the goods while in the hands of the carrier. In this transaction the money paid was called a loan; and whether it was a loan or an adjustment of the loss is the vital question at issue.

Under the contract the carrier was to have the benefit of any insurance effected on the property, and the plaintiff could not claim from the carrier and the insurance company a greater amount than the damage she really suffered. The learned trial judge instructed the jury, viz: " That was a lawful contract; the railroad company had a right to make the agreement, and if you are of the opinion that the insurance company paid $809 as an adjustment of the loss, but with a string to it, nevertheless it was a payment, and it ought to be deducted out of the $1,700, and the insurance company, which is in the business of taking risks like this ought to be held. If you do not believe, however, that the insurance company's payment was an adjustment and the payment of a loss, but was a bona fide loan, outside and independent of any insurance matter, then it ought not to be deducted."

Under the signed admission of counsel it was proper to receive in evidence the borrowed and received receipt so as to show the receipt of the money by the plaintiff and, with the other evidence in the case, to determine the character of that payment. It did not stand as the only evidence of the payment. The insurance company speaking through its agent said: " We took her loss to be $1,700; we had $2,000 insurance on property valued at $4,200, thereabouts, and loaned her $809.52 on the proportion of seventeen to the amount of the value." It was a significant fact that the amount paid was the exact sum total of her claim' against the insurance company. The counsel of the insurance company was selected by the plaintiff to secure the whole loss from the carrier, and that company funished witnesses to support her claim. If the carrier could be made to bear the whole burden, the insurance company would be entirely relieved from the risk it assumed, and the stipulation in

the insurance benefit clause in the shipping receipt would be rendered valueless to the carrier through an unfair combination of the owner and the insurance company, which would be manifestly unjust and unreasonable, as the contract provided that the carrier should pay a just assessment of the damage, and have full benefit of any insurance effected on the goods.

The construction of the receipt, as a writing, was for the court, but it was to be considered with the other evidence, and the jury was so instructed. If the payment was a bona fide loan, outside and independent of any insurance matter, the amount should not be deducted. This was the plaintiff's contention, and it was what the receipt purported, but, if, as the defendant insisted, it was an adjustment of the loss, it was a payment which the carrier, under the insurance benefit clause, was entitled to have considered. This fact was properly left to the jury to determine. We do not think the cases of Guiding Star, 53 Fed. Repr. 936, and Propeller Monticello v. Mollison, 17 How. 152, are applicable to this one, as in neither case was there, as here, an agreement that the carrier should have the benefit of insurance effected by the owner. In Inman v. South Carolina Ry. Co., 129 U. S. 128, the money had not been in fact paid to the owner by the insurance company at the time of trial, so that in that issue it could not be determined how much should be credited, but the Supreme Court recognized such right after payment had been made by saying that " by its (bill of lading) terms the plaintiffs were not compelled to insure for the benefit of the railroad company, but if they had insurance at the time of the loss which they could make available to the carrier, or which, before bringing suit against the company, they had collected without condition, then, if they had wrongfully refused to allow the carrier the benefit of the insurance, such a counterclaim might be sustained, otherwise not."

No contest between the two insurers is now before the court. In Phœnix Ins. Co. v. Erie Transportation Co., 117 U. S. 312, the controversy was between the insurance company and the carrier, and the question presented for decision was, whether the right of the shipper to recover against the carrier was not extinguished to the extent to which his loss had been paid by the insurer. If so, subrogation must necessarily be refused,

and it was refused for this reason. In Provident Insurance Co. v. Morse, 150 U. S. 99, it was held that in case of loss the carrier is primarily liable to the shipper, and the position of insurer is substantially that of a surety. The insurer can recover, after payment of a loss, by subrogation to the rights of the shipper, but upon no other ground; so that whatever amounts to an extinguishment of the rights of action of the shipper against the carrier must defeat the insurer's right to subrogation.

In Willock v. R. R. Co., 166 Pa. 184, the only question was, will the courts compel the performance of a contract between the shipper and carrier requiring the shipper to protect the carrier against the consequences of its own negligence? It was held that the carrier could not compel the shipper to release it and stipulate for complete immunity from the consequences of the negligence and fraud of himself or of servants and employees, because it would be contrary to public policy.

The assignments of error are overruled and the judgment is affirmed.