## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. SMITH BROS. GRAIN CO. et al.

(Court of Civil Appeals of Texas. Ft. Worth. Jan. 24, 1914.)

CARRIERS (§§ 157, 166*)—FREIGHT—BILLS OF LADING—REASONABLENESS OF STIPULATION.

A bill of lading provided that property delivered on private or other sidings shall be at the owner's risk after the cars are detached from trains. There was evidence that the shipper knew that there was no depot or agent at the destination of the shipment, and that it could only be left upon the sidetrack. Rev. St. 1911, art. 6589, requires every railroad company to erect at each place established for delivering freight suitable buildings, etc., to protect freight from damage by exposure, in default of which it shall be liable to the owner for resulting damage. Held, that the provision of the bill of lading was not contrary to any law, and the question of its reasonableness should be submitted to the jury; the only purpose of the statute being to protect freight from damage and exposure, so that it would not invalidate the contract of shipment.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 649, 672, 705½, 706, 732, 733; Dec. Dig. §§ 157, 166.*]

Appeal from Tarrant County Court; Chas. T. Prewitt, Judge.

Action by the Smith Bros. Grain Company and another against the St. Louis Southwestern Railway Company of Texas. From a

judgment for plaintiffs, defendant appeals. Reversed and remanded.

E. B. Perkins, of Dallas, and Thompson & Barwise and A. C. Wood, all of Ft. Worth, for appellant. Q. T. Moreland, of Ft. Worth, for appellees.

DUNKLIN, J. The St. Louis Southwestern Railway Company of Texas, defendant in the court below, has appealed from a judgment rendered against it in favor of the Smith Bros. Grain Company and Bert K. Smith, plaintiffs, for the value of a car load of feed and flour shipped over the Gulf, Colorado & Santa Fé Railway and defendant's railway from Ft. Worth, Tex., to Aldridge, Tex.

L. C. Odom Lumber Company received the car without any specific directions from plaintiffs to do so. At the time the car was shipped, plaintiffs drew a draft upon the L. C. Odom Lumber Company at Aldridge, Tex., in care of T. F. Patterson, banker, Pittsburg, Tex., for the selling price of the goods with the bill of lading attached to the draft, but this draft was not honored.

It was alleged in plaintiffs' petition that plaintiffs sold the contents of the car to the L. C. Odom Lumber Company, but according to other allegations in the petition, it can be reasonably inferred that the sale alleged was not absolute, but was conditioned upon the payment for the goods by the vendee upon the receipt of the goods. A bill of lading was introduced in evidence which showed that the goods were consigned to the Anchor Roller Mills, "destination, Aldridge, state of Texas," and that the freight was prepaid. The bill of lading contained no statement that the goods were "consigned to the order of any person named in such bill of lading," and therefore it was what is termed a "straight" bill of lading, instead of an "order" bill of lading, as defined by express provision shown in the face of the bill of lading. The following stipulation printed on the back of the instrument was made a part and parcel of the contract of shipment: "Property destined or taken from the station, wharf, or landing at which there is no regularly appointed agent shall be entirely at the risk of the owner after unloaded from cars or vessels, or until loaded into cars or vessels, and when received from or delivered on private or other sidings, wharves, or landings shall be at the owner's risk until the cars are attached to and after they are detached from trains."

It was proven beyond controversy that the town of Aldridge contained only about 75 or 100 inhabitants; that appellant had a side track used for the delivery of cars at that point, but maintained no station house or agent there; that the car in question was placed on the side track and, after being detached from appellant's train, was opened by a representative of the L. C. Odom Lumber Company and its contents taken and appropriated by that company. As the bill of lading was a "straight" bill of lading and not an "order" bill of lading, appellant insists that leaving the car upon the side track was a delivery within the meaning of the stipulation on the back of the bill of lading and quoted above. Revised Statutes, Art. 717.

Appellant requested an instruction to the jury which was given by the court, which, after reciting that the shipment was made upon a bill of lading containing the stipulation above quoted, concludes as follows: "And if you find and believe from the evidence that the said Aldridge was a nonagency point, and that the said car of goods was transported to said point and there placed on a side track or siding, and after being detached from the train was taken possession of by the L. C. Odom Lumber Company without the consent of the defendant railway company, you will find in favor of the defendant railway company and so say by your verdict." Hence the verdict of the jury imports a finding that the Odom Lumber Company took possession of the car with defendant's consent.

The only evidence relied on by appellees to show that the Odom Lumber Company took possession of the car with appellant's consent was the testimony of L. C. Odom, the manager of the company, who unloaded the car. After a careful examination of that testimony, the majority of us are of the opinion that it is insufficient to show such consent.

The special instruction given at appellant's request is upon the theory that the stipulation for the kind of delivery provided in the indorsement on the back of the bill of lading should be upheld as reasonable. We are of the opinion that the evidence was sufficient to support that contention, and are of the opinion further that there is no inhibition by the laws of this state against giving effect to such a contract under such circumstances. In addition to the stipulation in the bill of lading quoted above, it was alleged that at the time of the shipment plaintiffs knew that there was no depot building at Aldridge and no agent to take charge of the goods upon their arrival, and that the only delivery that could be made of the shipment would be to leave it upon the side track, and there was testimony tending to support this allegation. Elliott on Railroads, § 1521; 2 Hutchinson on Carriers (3d Ed.) § 710; Allen v. Pennsylvania Ry. Co., 183 Pa. 174, 38 Atl. 709, 39 L. R. A. 535; L. & N. Ry. Co. v. Gilmer, 89 Ala. 534, 7 South. 654; Railway Co. v. Wood, 66 Ala. 167, 41 Am. Rep. 749. But upon another trial the issue whether or not the stipulation for such a delivery upon the side track was reasonable should be left for determination by the jury under appropriate instructions from the court. T. & P. Ry. Co. v. Adams, 78 Tex. 372, 14 S. W. 666, 22 Am. St. Rep. 56.

Appellees invoke the provisions of article 6589 of the Revised Statutes, which reads: "Each and every railroad company is hereby required to erect at each and every depot, station or place established by such company for the reception and delivery of freight, suitable buildings or inclosures to protect produce, goods, wares and merchandise and freight of every description from damages by exposure to the weather, stock or otherwise; in default of which such railroad company shall be liable to the owner of such produce, goods, wares or merchandise for the amount of damages or loss sustained by reason of such improper exposure, together with all costs and expenses of recovering the same, including necessary attorney's fees."

The conclusion announced above is not at variance with this statute, as the only purpose of the statute was to protect property shipped from damages by reason of exposure to "weather, stock or otherwise."

In the absence of sufficient evidence to show that the Odom Lumber Company took possession of the car with defendant's consent, the judgment must be reversed, and the cause remanded, and it is so ordered.