## Hanger & Maxfield, Appellees, v. Bloomington, Decatur & Champaign Railway Company, Appellant.

1. CARRIERS, § 178*—*when assent to conditions in bill of lading presumed.* A shipper who has blank forms of bills of lading in his possession and fills them out and has been accustomed to do so for some time, is presumed to have knowledge of the conditions of the bills of lading and to assent to such conditions, especially where there is no denial that he had knowledge of such conditions or that he assented thereto.

2. CARRIERS, § 178*—*when shipper estopped to claim want of notice of limitations in bill of lading.* A shipper who has knowledge of the contents of bills of lading in his possession and fills them out, according to his custom, from time to time, is estopped to claim that he had no notice of the conditions therein and that he did not assent to such conditions.

Appeal from the Circuit Court of McLean county; the Hon. COLOS-TIN D. MYERS, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded. Opinion filed April 16, 1915.

LIVINGSTON & BACH, for appellant.

LIGHT & LIGHT, for appellees.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

Appellees sued appellant before a justice of the peace to recover damages for the loss of one barrel of kerosene. On an appeal to the Circuit Court of McLean county a trial was had before the court without a

jury and judgment rendered against appellant for $12.60, the value of the kerosene.

The facts are either stipulated or substantially undisputed, and briefly stated are as follows: Appellees are oil merchants located at Bloomington, Illinois, and in January, 1912, received through one of their traveling salesmen a written order for the barrel of oil in controversy. This order reads as follows:

"January 3, 1912.

Sold to                 Ed. Stoll

Ship to Bell Station, Central

Received payment, German American Bank,

Lincoln, Ills."

It is conceded that the words "Ship to Bell Station, Central" are a direction to ship the oil to the consignee at Bell Station on the Illinois Central Railroad. Kate Maxfield, one of the partners in the firm of Hanger & Maxfield, appellees, and bookkeeper therefor, prepared a bill of lading for the shipment of the oil to Bell Station on the Illinois Central Railroad and caused it to be delivered with the oil at the station of that company in Bloomington. The agent of the Illinois Central Railroad Company erroneously claimed that there was no such station on the line of that road and refused to receive the oil. Miss Maxfield then called up appellant company and after a conversation with appellant's agent, through the telephone wrote out a new bill of lading for the shipment of the oil to Bell Station on appellant's line and caused the same, together with the oil, to be delivered to appellant.

Appellant operates an interurban electric railway and stops its cars on signal at certain highway crossings along its line in the country in addition to the stops made in cities and villages. One of these highway crossing stops in the country was called Bell and is located south of Springfield. At Bell, and other country highway crossing stops, no agents, sheds, depots or warehouses are maintained, but only

platforms, erected for the convenience of loading and unloading passengers and freight.

The barrel was received by appellant for transportation and was carried and deposited by it on the platform at the highway crossing stop on its line called Bell. After several days, the consignee not having received the oil, an investigation disclosed that there was in fact a siding called Bell on the Illinois Central Railroad, to which the oil should have been shipped as directed by the order. Appellee then requested appellant to return the oil, and when the latter attempted to do so, it found that the oil had disappeared from the platform and had evidently been stolen therefrom.

Miss Maxfield testified that she prepared the bill of lading in this case herself and that it was taken from a book of blank bills of lading which she kept for the purpose of shipping goods over appellant's road and had used and filled out similar blanks for shipping goods over appellant's railroad ever since it was built. The first part of the bill of lading reads as follows:

"Received subject to the classifications and tariffs in effect on the date of issue of this original bill of lading, at Bloomington, Ill. Jan. 10, 1912, from H. & M. Ind. Oil Co., the property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned and destined as indicated below, which said company agrees to carry to its usual place of delivery at said destination, if on its road, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back hereof) and which are agreed to by the shipper and accepted for himself and his assigns."

The words "Bloomington, Ill. Jan. 10, 1912," and

"H & M. Ind. Oil Co." were written in by Miss Max-field in the blank spaces left for that purpose. One of the conditions on the back of the bill of lading is as follows:

"Property destined to or taken from a station, wharf or landing at which there is no regularly appointed agent shall be entirely at the risk of the owner after unloaded from the cars or vessels or until loaded into cars or vessels and when received from or delivered on private or other sidings, wharves, or landings, shall be at owner's risk until the cars are attached to and after they are detached from train."

It is the contention of appellees that appellant, as a common carrier, having assumed the transportation of the oil, became an insurer against everything but the act of God, the public enemy or the inherent nature of the property itself; that this common-law liability cannot be eliminated by the carrier by notice without also the express assent of the shipper, and that the burden of proving such notice and assent is on the carrier. Counsel for appellant concede that such is the general rule of law in this state but claim: First, that an electric interurban railway company which receives non-perishable freight for shipment over its railway line, billed to a crossroad stop, where such interurban railway does not maintain an agent or warehouse, is not liable for the loss of such freight if it carries said freight safely and deposits the same on the platform at the place or destination marked thereon. *Louisville & N. R. Co. v. Gilmer*, 89 Ala. 534; *South & North Alabama R. Co. v. Wood*, 66 Ala. 167, 72 Ala. 451; *Hill v. St. Louis Southwestern Ry. Co.*, 67 Ark. 402; and second, that under the facts proven in this case, appellees not only had knowledge of the condition printed on the back of this bill of lading, but are also estopped from denying that they assented thereto.

The first proposition above advanced by appellant has never been passed upon by an Appellate tribunal

in this State and it is unnecessary to pass upon it here. The second proposition, however, has been sustained under very similar facts to those shown by the record in this case. In the case of *Field v. Chicago & R. I. R. Co.,* 71 Ill. 458, damages were sought for a delay of four months in the transportation and delivery of flour through the negligence of the railroad company. The plaintiff in that case, as in this, filled up the blanks in the bill of lading wherein was contained the provision that the responsibility of the company terminated on the delivery of the freight to the company whose line may be considered a part of the route to the place of destination. It appeared from the facts that the delay was caused by a connecting carrier. The plaintiff in that case denied knowledge of the conditions in the bill of lading and introduced evidence to that effect. The Supreme Court held:

"The question, then, made in this case, of the knowledge of the shipper as to the contents of these bills of lading, has been found against the plaintiff—that he had such knowledge; and looking into the transaction of the parties, and the proof that these bills of lading were in possession of the plaintiff, and filled out by his clerk, it was impossible, in the very nature of things, their contents should not have been known and well understood by the plaintiff. * * * It is past reasonable belief."

In commenting upon this case, the Supreme Court, in the case of *Erie & W. Transp. Co. v. Dater,* 91 Ill. 195, said:

"The proof in that respect was accompanied with the testimony of the appellees that they were unaware of the provision. There was nothing, here of the kind which appeared in the cases of *Oppenheimer v. United States Express Co.,* 69 Ill. 62, and *Field v. Chicago & Rock Island R. R. Co., supra,* where the receipts or bills of lading were in the previous possession of the consignors, and the blanks in them had been filled up by the consignors or their clerks, there having been a previous like practice in respect to shipments before, and where, although there was the testimony of the

480    APPELLATE COURTS OF ILLINOIS.

Hanger & Maxfield v. Bloomington, D. & C. Ry. Co., 193 Ill. App. 475.

consignors that they had no knowledge of the stipulations limiting the responsibility of the carrier, and never assented to them, this court said, in the former case, that the consignors must be held to have had such knowledge, and in the latter, that it was impossible in the very nature of things, that the contents of the bills of lading should not have been known and well understood by the consignor, and that the facts existing were sufficient to outweigh such contrary statements of the consignor and his clerk; and the finding of the court below that there was such knowledge and assent was sustained. But there was no such evidence, in the present case, of the consignors having the bill of lading previously in their possession and filling it out, or of a practice, before, of doing so with respect to similar bills of lading, or of having any such in their possession for the purpose of filling out for use. There is nothing here inconsistent with what was said in *Merchants' Dispatch & Transportation Co. v. Moore,* 88 Ill. 138, as the presumption there spoken of was indulged in the absence of evidence to the contrary."

In the case of *Boscowitz v. Adams Exp. Co.* 93 Ill. 523, it is stated:

"The same question arose in *Field v. Chicago & Rock Island Railroad Co.,* 71 Ill. 458. In that case the bill of lading was filled out by the clerk of plaintiff, and as the court found the shippers had notice of the contents and assented to the restrictions therein contained, therefore the receipt or bill of lading was the contract between the parties. It is not understood there has been any departure from the doctrine of that case. That the fact the owner of the goods, by himself or clerk, filled up the receipt taken, is evidence tending to show the shippers had notice of the conditions and must have assented to them, may be true, but it is not conclusive. It is still a question of fact. Sometimes such evidence may produce conviction, and justly so, as in *Field's* case, but cases may arise where the acts of the party may be susceptible of satisfactory explanation."

It will thus be seen that where shippers have the blank forms of bills of lading in their possession and

fill them out themselves and have been accustomed to do so for a considerable length of time, they may be estopped from denying that they had notice of the conditions therein, and that they assented thereto, and such knowledge and assent may be presumed from such facts as a matter of law. The facts in the present case more strongly support this proposition than those in any of the cases cited, for the reason that there is no denial by appellees that they had knowledge of the said condition on the back of the bill of lading, or that they assented thereto.

The court held four propositions, submitted by appellees to be the law. They are of similar import and the first two are as follows:

"1. The court holds as a matter of law applicable to this case that the defendant received and accepted said goods in question as a common carrier of goods for hire, and by such acceptance assumed the obligation of such carrier to the plaintiffs, which obligation was that defendant was an absolute insurer of the safe delivery of said goods to the consignee as against all loss except that caused by the act of God, the public enemy or the inherent nature of the property itself."

"2. The court holds as a matter of law applicable to this case that there is no evidence that the loss of the kerosene and drum was caused by an act of God, the public enemy or because of the inherent nature of the oil itself, and in the absence of such evidence the defendant is liable for the loss of the property."

It is thus apparent that the court gave no consideration to the evidence tending to show that appellees knew of the condition in the bill of lading limiting the liability of appellant in the transportation of goods to places of this character, and that they assented thereto. The rules of law held by the court were inapplicable to the facts in this case. *Illinois Match Co. v. Chicago, R. I. & P. Ry. Co.*, 250 Ill. 396. The judgment is reversed and the cause remanded.

*Reversed and remanded.*