## UNITED STATES v. PHILADELPHIA & R. RY. CO.

(District Court, E. D. Pennsylvania. May 10, 1915.)

### No. 2398.

CARRIERS ☞37—TRANSPORTATION OF ANIMALS—STATUTES.

Act June 29, 1906, c. 3594, 34 Stat. 607 (Comp. St. 1913, §§ 8651–8654), prohibits carriers in interstate commerce from confining animals in cars longer than a specified time without unloading for rest, water, and feed, and provides that animals so unloaded shall be fed and watered during the rest, and declares that any carrier knowingly and willfully failing to comply with the act shall be liable to a penalty. A contract for the carriage of live stock called for delivery at a private siding of the consignee, but custom required the carrier to place the cars at a point on the siding opposite a runway provided for unloading. The carrier did not place the cars at the point of unloading within the time, but confined the stock in the cars beyond the statutory period without unloading the same for rest, water, or feeding. Nothing prevented the carrier from unloading, feeding, and watering the stock. Held, that the carrier was liable to the penalty, for the delivery of the stock was not complete until each car was placed opposite the runway for unloading, since, as long as the responsibility or the carrier rested on it, the responsibility for the care of the stock continued, so that it was required to provide for the care of the stock until its duties as carrier had been fulfilled by complete delivery.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. ☞37.]

Action for a penalty by the United States against the Philadelphia & Reading Railway Company. Judgment for the United States.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa.

Wm. Clarke Mason, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This is an action for a penalty under the provisions of the act of June 29, 1906. It was by agreement tried before the court without the intervention of a jury under the provisions of the Revised Statutes. There were several cases tried at the same sitting of the court, although kept separate in form. The facts are not in controversy. The present case is in effect a case stated. There is but one question involved in it. The question is whether the defendant carrier had been relieved from responsibility for the care of cattle shipped over its road. Whether so relieved turns upon the question of delivery. For the purpose of having this question squarely met, and having no other questions involved in the case, the defendant admits its act to have been knowingly and willfully committed, within the meaning of the act of Congress.

The shipment concerned was one of cattle. They were consigned to J. J. Felin & Co., of Philadelphia. The shipments came on two cars, L. V. Nos. 89919 and 90000. There were 27 cows in each car. The cars were loaded in Buffalo, and came over the tracks of the Lehigh Valley Railroad to East Penn Junction, and were there transferred to the tracks of the defendant company and transported to Nicetown, their destination. They were loaded September 30, 1912, at 1:40 p. m., and arrived at their destination October 2, 1912. There had been an extension of the time during which the cattle could be confined. They arrived at the place of destination within the time limit. A bill of lading called for a delivery on the siding of the consignees to which cars were taken by the defendant company. This siding belonged to the consignees, and the defendant company had no connection therewith, beyond the right to enter upon the said siding for the purpose of there delivering cars consigned to the owners of the siding and the further purpose of taking cars therefrom. Adjacent to the siding is a permanent runway, which affords the only means for loading and unloading live stock to and from cars on the siding. Although the cars reached the siding within the time limit, as above stated, the cars stood there unloaded for a considerably longer time. The time limit was 36 hours. In the case of car L. V. No. 89919 a period of at least 46 hours elapsed from the time the Lehigh Valley Railroad took charge of them until unloaded. In the case of car L. V. No. 90000 a like time of 68 hours elapsed. Neither of cars had been unloaded en route, and the cattle had been kept in the cars without rest, water, or feed for the lengths of time above mentioned, respectively.

The only explanation for the delay is to be found in the fact that when the cars arrived there was an unloaded car then standing opposite the runway. The defendant company removed this car, and pushed the two cars first referred to over the siding and beyond the runway, and then replaced the car which had been removed. Afterwards the defendant company removed the last-mentioned car when it had been emptied, and moved one of the first-mentioned loaded

cars opposite the runway or chute. After this had been unloaded, at the request of the consignees, this car was removed, and the second of the first-mentioned cars was placed opposite the runway and unloaded. There was no provision in the contract of hiring for sucu switching service; the contract of carriage calling for delivery at the siding only. The stipulation entered into by the parties makes the ruling of the case to pivot upon the point of whether the delivery was complete when the cars were placed upon the siding, or not until the cars were placed opposite the runway or chute, which was the only place at which practically the unloading could be accomplished.

The contract is a Pennsylvania contract. As illustrative of the law of Pennsylvania on the subject of delivery by carriers by rail, we have been referred to the case of McMasters v. Penna. Railroad, 69 Pa. 374, 8 Am. Rep. 264, and Allan v. Railroad, 183 Pa. 174, 38 Atl. 709, 39 L. R. A. 535. These cases rule that the question of delivery is determined by contract and by custom. If not controlled by express terms in the contract, a clearly established custom will prevail, if reasonable and otherwise within the rule of good customs. We therefore get the principle that the question of when delivery is complete, in the sense of the responsibility of the carrier ending, depends upon the contract of shipment, construed and interpreted in the light of established custom in general cases and the practice with particular shippers. In other words, the terms of the formal contract are to be considered as modified by the practice. The practical application of the principle to this case is that the contract is to be assumed to mean that the cattle would be delivered on the siding in accordance with the usual practice. The inference is irresistible from the facts stipulated that the practice of the railroad company in its dealings with shipments of this character was not to limit the carriage to the placing of the cars on the siding, but to continue it to the placing of the cars opposite the chute. What was done in this case conformed to this practice. That the formal terms of the printed contract of shipment did not disclose any contractual obligation upon the carrier after the cars had reached the siding is aside from the question here involved, because the practice is to be written into the printed terms, and when so read the contractual obligation does arise.

This principle of interpretation of the contract of delivery is peculiarly applicable in respect of the relations of the carrier to the provisions of the act of Congress and of the purposes of the latter. The purpose is to assure proper care of the animals shipped. Primarily the obligation of the railroad company is that of a carrier only. Sustenance care rests upon the owner. The law, however, imposes it upon the carrier as well. The carrier cannot relieve itself from this law-imposed duty by contract. As long as the responsibility of the carrier rests upon it, the responsibility for the care of the animals continues. It must therefore provide for their care until its duties as a carrier have been fulfilled. As under the facts in this case, by its contract with the consignees as modified by its practice under that form of contract, it did not deliver to the consignee, until

the car was placed opposite the runway, its responsibility as a caretaker continued to that time, and, as more than the statutory time limit had elapsed, the liability to imposition of the fine follows.

The case is formally disposed of by the following findings of fact and conclusions of law:

### Findings of Fact.

1. The formal written contract of carriage called for delivery at the private siding of the consignee at Nicetown, Philadelphia.

2. The custom and practice in like deliveries by the carrier to the consignee was that the carrier should place the cars at a point on the siding opposite the runway provided for the unloading of cattle from the cars.

3. So far as it is a question of fact, the fact is found that the contract of carriage between the carrier and the consignee called for delivery at a point on the siding opposite the runway.

4. The defendant railroad, Philadelphia & Reading Railway Company, between September 29, 1912, and October 4, 1912, transported two car loads of cattle, containing 27 cows each, from one state, to wit, the state of New York, into and through another state, to wit, the state of Pennsylvania, and confined the said cattle in said cars for a longer period than 36 consecutive hours without unloading the same into pens or otherwise for rest, water, or feeding, without such unloading having been prevented by any accidental or unavoidable cause, and said animals were not at the time carried in cars in which they could have had proper feed, water, space, and opportunity to rest, nor did said cattle have in fact proper food, water, space, or opportunity to rest.

5. The said defendant, Philadelphia & Reading Railway Company, knowingly and willfully failed to comply with the provisions of the statutes of the United States in the respect above mentioned. The time during which said failure to provide said cattle with proper feed, water, space, and opportunity to rest was in respect to one of said cars, to wit, L. V. No. 89919, for and during a period of 46 hours, and with respect to the other of said cars, L. V. No. 90000, was for and during the period of time of 68 consecutive hours.

### Conclusions of Law.

1. So far as it is a question of law, the delivery of the cattle by the carrier to the consignee was not complete until each car in which the cattle were loaded was placed opposite the runway on the siding of the consignee.

2. So far as it is a conclusion of law, delivery of car L. V. No. 89919 to the consignees had not been made until 46 hours after delivery to the carrier, and delivery of car L. V. No. 90000 was not made to the consignee until after the lapse of 68 hours from the time of delivery to the carrier.

3. The United States is entitled to judgment in its favor against the defendant for the sum of $100 penalty prescribed by the act of Congress.

4. The United States is entitled to costs.