UNITED STATES v. PHILADELPHIA & R. R. CO.

(District Court, E. D. Pennsylvania. May 13, 1915.)

No. 3294.

CARRIERS ⬮37—TRANSPORTATION OF ANIMALS—STATUTES.

Act June 29, 1906, c. 3594, 34 Stat. 607 (Comp. St. 1913, §§ 8651–8654), prohibits carriers in interstate commerce from confining animals longer than a specified time without unloading for rest, water, and feed, and declares that any carrier knowingly and willfully failing to comply with the act shall be liable to a penalty. A carrier placed cars of live stock on the consignee's siding for delivery, and notified the consignee thereof, within the time limit. The consignee refused to unload, because its place of business was closed, and because of the cold and stormy weather. The carrier had provided proper unloading pens, but they were not within available distance. The carrier confined the animals in the cars, and hauling the cars to its pens would not have released the animals sooner than was done. The carrier knew of the conditions of the consignee's siding and had refused to erect a shed there. *Held*, that the carrier was not liable for a penalty, because the act did not impose a duty to provide shelter pens at every place of delivery of car load shipments of animals, and because it did not confine the animals beyond the time limited in cars while in transit, and because there was no willful failure of the carrier to comply with the act.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 95, 927; Dec. Dig. ⬮37.]

Action for penalty by the United States against the Philadelphia & Reading Railroad Company. Judgment for defendant.

Robert J. Sterrett, Asst. U. S. Atty., and Francis Fisher Kane, U. S. Atty., both of Philadelphia, Pa., for the United States.

Wm. Clarke Mason, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. This case is one of an action for the recovery of the penalty imposed by the act of June 29, 1906. The facts are, as far as the imposition of the penalty is concerned, the same as in

case No. 2398, 223 Fed. 202, and in No. 3296, 223 Fed. 207, with these differences: In No. 2398, the defendant company admitted its acts were "knowingly and willfully" done. In No. 3296 the cars were in fact placed opposite the unloading chute within the time limit, but defendant denied any willful omission of duty. In the present case the cars were placed on the siding, and in like manner willfulness is denied. The cause was by agreement tried without a jury.

The facts in the case are these: The case concerns a car load of 167 hogs. They were last cared for at Pittsburgh, en route from beyond the state of Pennsylvania, and were there loaded on defendant's car March 9, 1914, at 11:30 a. m., consigned to A. H. March Packing Company at Bridgeport. The car arrived at the place of delivery at 8 o'clock p. m. March 10, 1914, and the consignee notified at 9:30 p. m. The consignee refused to unload. There were two reasons for this: The place of delivery was on a siding in defendant's yard about one-fifth to one-quarter of a mile from the plant of consignee. The siding was used exclusively for the shipments of this consignee. The arrangements made consisted of an unloading chute, which led into an open pen. This consisted merely of a fence-inclosed space. There was no shelter or overhead construction of any kind. One of consignees' reasons for refusing to unload was that their place of business was closed from 5:30 p. m. until the next morning. There were no men to handle the hogs, and besides it was not practicable to drive them at night. The other reason was that the night was cold and stormy, and the hogs, if turned out of the car into the pen, would have perished. Upon the refusal of the consignees to unload, it then became a matter of judgment what to do with the hogs. It was decided to leave them in the car. The defendant company had provided proper unloading pens for animals, so as to assure their not being confined over the time limit while in transit. There was no evidence, however, of any such pen being within available distance. It will be observed that the car reached its destination within the time limit. This had been extended to 36 hours, and there were 3½ hours to spare after arrival of the car, and 2 hours after notification to the consignees. The car could not be taken to the chute, because the car which figured in case No. 3296 had been placed there. The only courses open to the railroad managers were to have hauled the car away, to have unloaded the hogs into the open pen, or to have done what they did do. We cannot find under the evidence that hauling the car away would have released the hogs sooner than was done. The unloading of them to face perishing in the storm would have been cruelty. The only thing left to be done was to do just what was done. The erection of a sheltered pen, where animals could be taken care of, would have met the exigencies of the situation. The defendant company had knowledge of the conditions, having been asked to erect such a shed. This they had declined to do. They can, therefore, be found to have acted with knowledge; but there is no justification for a finding of "willful" failure to comply with the requirements of the act of Congress, unless it was their legal duty to supply accommodations for animals at each place of delivery.

The legal principles involved have been fully discussed in connection

with case No. 3296. There is no occasion to discuss them further, and none for special findings. We therefore content ourselves with a statement of the conclusions reached, which are:

1. The act of Congress does not impose a duty upon railroads to provide shelter pens at every place of delivery of car load shipments of animals.

2. The defendant did not confine these hogs beyond the time limit in cars while in transit.

3. There was no willful failure on the part of the defendant to comply with the requirements of the act of Congress.

Judgment is therefore entered in favor of the defendant.